JOHN D. WHITE v. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

Cause of action: ASSIGNMENT: DELIVERY AND ACCEPTANCE: EVIDENCE.
1 The commencement of a suit by the assignee of a cause of action, and the introduction in evidence of the assignment with knowledge of the assignor and without objection on his part, is sufficient evidence of delivery and acceptance of the assignment

to warrant an instruction that a transfer of the cause was conclusively shown.

**Evidence:** RELEVANCY.   An inquiry calling for the opinion of a witness on a subject not pertinent to any issue in the case should be refused.

**Same.**  An inquiry which assumes the existence of facts not shown in evidence should also be refused.

**Personal injuries:** PAIN AND SUFFERING: DAMAGES: EVIDENCE.  In an action for personal injuries evidence that an operation at small expense and without serious danger would relieve much pain and suffering is competent, as bearing on the question of damages; but the compensation for pain and suffering should not be measured by the reasonable cost of the operation.

**Argument:** IMPROPER REMARKS OF COUNSEL: REVERSIBLE ERROR.  In this action for personal injury the error arising from improper remarks of counsel as to the wealth of defendant is held to have been cured by his withdrawal thereof and apology for having made the same.

It is also held that the remarks of counsel urging the jury to return a large verdict, which if erroneous might be corrected by the court, was reversible error.

Remarks of counsel contrasting the poverty of the plaintiff with the wealth of the defendant, that a large part of the verdict would be consumed by attorney's fees, and that the court could reduce the verdict if too large, all of which the court permitted, was also reversible error.

**Same.**  The fact that the court has power to reduce an excessive verdict will not, of itself, render the improper remarks of counsel, concerning the amount of the verdict, harmless error.

*Appeal from Jones District Court.*—HON. F. O. ELLISON, Judge.

THURSDAY, JANUARY 13, 1910.

ACTION for damages resulted in judgment against defendant, from which it appeals.—*Reversed.*

*B. H. Miller, James C. Davis, George E. Hise,* and *A. A. McLaughlin,* for appellant.

*Jamison, Smythe & Gorman,* for appellee.

Ladd, J.—John Humpall had been in defendant's employment twenty-one years. At the time of receiving the injury complained of, he was engaged as clinker pitman and in handling coal for engines. The clinker pit was about twenty feet long, three and one-half feet deep, below the top of the rails, four feet wide at the top, and three feet at the bottom. At the north side of the track and two or three feet therefrom was a coal shed some sixty-eight feet long with an elevator platform eighteen feet in length at the east end which was about ten feet west of the pit. East of the pit was the turntable. Ordinarily the engine, after being switched on this track, would couple onto the coal car being unloaded at the shed and back or push it over and past the clinker pit, stopping over it to be cleaned out. In the afternoon of February 21, 1906, according to Humpall's testimony, the coal car was standing with the east end seven or eight feet from the platform. Humpall, observing that the couplers were open, removed the block from the car wheel and signaled the engineer to come on, which he did and coupled onto the car, moving it about four feet, and, upon signal, it was stopped so that the end was at or a little east of the center of the pit. He then went to the east end of the pit between the rails, placed his left hand on the south rail, and jumped to the bottom some two or three feet from the end. The car was then standing, and he turned south, seized a stick at the lower end, leaning in the southeast corner of the pit, with which to signal the engineer to come ahead, but, upon rising and turning back to do so, noticed the car was over him. He dropped down, but in some way his right hand got or remained on the rail about two and one-half feet west of the end of the pit, and the wheels ran over it. Three fingers necessarily were amputated at the second joint, and the little finger at the first joint. Evidence of contradictory tes-

timony by him at a prior trial was adduced, but he attempted to explain this by testifying to subsequent measurements.   Also there was evidence of contradictory statements.   On the other hand, the theory of defendant, which evidence tended to sustain, was that the engine was coupled to the coal car west of the pit; that Humpall immediately removed the block from under the wheel, signaled the engineer to come on, and started on a run to the east on the south side of the track; that when he was about half the car length the engine moved slowly forward; that Humpall turned in front of the moving car and jumped into the pit from the side, but not in time to avoid injury from the wheels of the car.   On the trial all allegations of negligence were withdrawn except two:   (1) That the engineer moved the engine over the cinder pit without giving warning to Humpall; and (2) that he so did without having received a signal from Humpall so to do.   The claim for damages was assigned to plaintiff, and this action begun for recovery therefor.

I.   The assignment of the cause of action to plaintiff in due form, the signature of Humpall, identified by him, attached thereto was introduced in evidence.   The court instructed the jury on the theory that this was conclusive proof of the transfer of the cause of action.   Exception is taken for that, as is said, there was no evidence of delivery or acceptance.   But the institution of suit thereon and the introduction of the assignment in evidence, in the absence of anything indicating the contrary, was sufficient proof of acceptance.   The assignment was in the possession of the plaintiff, and this, in connection with the assignor's knowledge of the use made of it without objection on his part, left no room for inference other than of its voluntary delivery.   There was no error in treating the evidence of the transfer as conclusive.

1. Causes of action: assignment: delivery and acceptance: evidence.

II.   Over objection, the engineer was permitted to

answer "yes" in response to the following inquiry on cross-examination: "You know, as an experienced railroad man,

2. EVIDENCE: relevancy.

that, with all the care you can exercise, these accidents happen, and that it is somebody's fault, don't you?" The inquiry merely called for an opinion, not pertinent to any issue in the case, and the objection should have been sustained. Though the ruling could not well have been prejudicial, there was no occasion for injecting matter of argument in the case by means of improper examination.

III. One Troy had testified that Humpall assisted in placing a car where the coal car was at the time of the accident to be photographed, and was asked: "Where did

3. SAME.

Humpall say the east end of the car was with reference to the west end of the cinder pit at the time the coupling was made just before he was hurt?" An objection "to the question, as assuming the witness has stated so," was sustained. The ruling was correct, for the witness had not testified that Humpall had made any reference to where the car stood at the time of the coupling.

IV. The evidence tended to show that Humpall suffered some pain in his fingers when the weather changed, that the contraction of the skin tissue caused pain at the

4. PERSONAL INJURIES: pain and suffering: damages: evidence.

ends, and that these were sensitive, and contact with anything caused suffering. A physician testified that this might be remedied by a surgical operation at an expense of from $25 to $50 and the loss of a week or two in time; that such operation would be without pain, upon administration of an anæsthetic; and that it would not be attended with danger and would result in a better hand which could be used as well. He testified farther that he "would take the fingers off a little farther back, and that would leave a little more covering of the periosteum, and the bones would be down deeper and would not be so tender. . . .

I would have the periosteum so that it would not draw so tight, and there would be greater freedom in bending and less tenderness at the ends." Based on this evidence, the defendant requested the court to instruct the jury that: "If you find from the evidence that John Humpall's fingers, at the place of amputation, still cause him pain, and that such pain can be obviated by a new amputation, at small expense, and without serious danger to said John Humpall, then you are instructed that it will be the duty of said John Humpall to have such new amputation, and he will in no event be entitled to recover for any pain or suffering that such new amputation would prevent." The instruction was refused, and no reference to the subject made in the charge. The evidence bore on the character and extent of the injury, and therefore was appropriate for the consideration of the jury in determining the amount of damages to be allowed. *Bailey v. Centerville,* 108 Iowa, 20; *Keyes v. Cedar Falls,* 107 Iowa, 509. Of course; no one can be said to owe the duty of submitting to an operation, especially where the administration of an anæsthetic is necessary in order that it be performed. No right is held more sacred, or is more carefully guarded by the common law, than is the right of every individual to the possession and control of his own person, free from all restraint or interference from others, unless by clear and unquestionable authority of law. As is well said by Judge Cooley: "The right to one's person may be said to be a right of complete immunity; to be let alone." Cooley on Torts, 33. Whether an injured person shall submit to a further mutilation of his person is essentially a matter of personal choice. This is necessarily so, for experience has demonstrated that every operation is performed with some risk. But when pain may be obviated, and the condition of the injured member improved, by an operation without injury and at small expense and slight inconvenience, the person injured ought not to be

recompensed on the theory that he will not avail himself of the benefits of modern surgery. Nor, on the other hand, is compensation to be limited to the reasonable cost of surgery as though the injured person were a chattel being put in state of repair. The feasibility of an operation calculated to obviate pain and improve conditions is to be considered by the jury, not owing to any duty of the injured party to submit his person to the surgeon's knife, but as bearing on the nature and extent of the injury and the probable consequences when accorded such treatment as ordinary prudence shall dictate. Though the instruction was not without fault, the attention of the jury might well have been directed to the feasibility and probable effect of the operation as bearing on the amount of damages to be allowed.

V. In the opening argument to the jury, Mr. Smythe, one of the attorneys for plaintiff, said: "Are you going to turn him (plaintiff) out of this court, and say you are not going to allow him anything, and by your verdict say you are going to let this great corporation, worth millions and millions"—Here counsel for defendant objected and asked that the attorney be admonished not to proceed with that kind of an argument. Thereupon Mr. Jamison promptly withdrew the allusion to the wealth of the defendant and apologized for saying it, but counsel for defendant requested the court to admonish the jury that whether the corporation was wealthy or poor had nothing to do with the case. In the closing argument Mr. Jamison said to the jury: "You can not allow him less than $6,000 or $7,000 in this case and do justice to Mr. Hump-all. Out of this $6,000 or $7,000 he has got to live; he has got to use $400 or $500 for living. He can not make that. He has got to have another operation and to pay for that. When you come to measuring $600 or $1,000, or $1,500, or $2,000, for pain and suffering he is likely to

5. ARGUMENT: improper remarks of counsel: reversible error.

endure, you are the sole judges; it is for you to say, but if you return a verdict that is too large, that is too much, the court can say it is excessive and reduce it. Give such a verdict so that the court can exercise its power and say to Humpall, 'I think that is too high.'" The counsel for defendant here objected to this line of argument because unsupported by the record and improper and unfair, and asked the court to admonish the attorney not to pursue it farther. To this Mr. Jamison responded: "If there is anything wrong in that, I will withdraw it." Defendant's attorney replied: "He withdraws it when it is too late. We want the court to pass on the objection so I will have my record." The court: "I think he has a right to explain his reason for his position to the jury." Later in his argument, Mr. Jamison also said that: "A man at the age of Mr. Humpall, with his limited education and his experience and knowledge, can not engage in other lines of business. He is entitled to his living for the next ten years, and this company ought to bear it. He has been compelled to engage in this litigation. He has no property. He has been compelled to engage counsel to carry on this litigation, and this will take one-half of what he recovers." To this defendant's attorney again objected because unsupported by the evidence and unfair argument amounting to misconduct, and asked the court to admonish counsel to desist therefrom. Mr. Jamison responded: "I disclaim anything of that kind. I was only mentioning it along with the claim for pain and suffering to meet the claim of Mr. McLaughlin that, if there was a verdict in this case, it should be for a small amount." There was no ruling by the court save as indicated.

Whether by design or inadvertently in the heat of argument counsel succeeded in getting four matters before the jury, none of which were entitled to consideration: (1) The poverty of plaintiff; (2) the wealth of defendant; (3) that it would cost plaintiff one-half of what he recov-

ered for counsel fees; and (4) that the court would re-
duce the verdict if for too large an amount.    True there
was some evidence that plaintiff was without means, but
this did not authorize counsel to make use of the circum-
stance as a basis of argument contrasting his poverty with
defendant's wealth.    Neither circumstance was entitled to
the slightest weight in determining the amount of damages
to be allowed.    But counsel withdrew the remark concern-
ing defendant's millions in a way to obviate any prejudice,
for what he said plainly indicated that this was not for
the jury's consideration, and but for what followed we
should not be inclined to interfere.    With the approval of
the court, however, he urged the jury to avoid their duty
in assessing the damages on the basis of fair compensation
and to return an excessive verdict so that the court would
be required to reduce it.    This was a direct appeal to the
jurors to forswear their duty and shift the burden to the
court, and ought not to have been tolerated.    The line of
argument pursued, in effect, was that the jurors would be
blamable if the assessment of damages were too low, while
they might shirk all responsibility by putting it too high
and allow the court to reduce it.    Counsel's explanation
that this was in response to the contention of defendant's
attorney that the verdict should be small but emphasized
the objections to what had been said by reasserting the
same as proper for consideration.    In view of the attitude
of the court, it may well be assumed that the jury took
these matters, as well as the amount of plaintiff's attor-
ney's fees, into account, and they are to be regarded as ob-
jectionable as though improperly injected as evidence.

Appellee argues that, as what was said could do no
more than affect the amount of damages allowed, and as
this is within the control of the court, there should not be a
reversal on this ground.    A sufficient answer
6. SAME.                is that defendant was entitled to have the
damages assessed after a fair trial by an impartial jury.

Notwithstanding such a trial, the verdict may be found by the court to be excessive, and it is then only that this court will undertake to correct the error by permitting the filing of a remittitur. We are constrained to hold the conduct of counsel was prejudicial, and that for this reason the judgment must be reversed.

The criticisms of the eleventh and thirteenth instructions will be obviated on another trial. A careful examination of the record has convinced us that the evidence was such as to carry the case to the jury.—*Reversed.*