JONES et al. v. EPPLER.

No. 35375.

Supreme Court of Oklahoma.

Dec. 8, 1953.

Rehearing Denied Feb. 2, 1954.

454

Welcome D. Pierson, Oklahoma City, for plaintiffs in error.

Bishop & Driscoll, Seminole, Wallace Hatcher, Pauls Valley, for defendant in error.

JOHNSON, Vice Chief Justice.

The parties herein occupied reverse relative positions in the trial court and will be referred to as they there appeared.

This is an appeal by the defendants from a jury's verdict and judgment for plaintiff for damages for personal injuries in an action brought in the District Court of Garvin County, Oklahoma.

The defendants, for reversal, interpose one hundred eleven assignments of error, which they argue under nine separate propositions.

Under the first proposition defendants assert error of the trial court in instructing the jury. They assert that the issues were few and simple and that the instructions (all of which were excepted to by defendants and exceptions allowed) submitted by the court to the jury in the case at bar are rather lengthy, consisting of 48 separate instructions, comprising 30 pages in the casemade; that in some instances several instructions are given on the same subject, and that the charge of the court to the jury is subject to the criticism outlined by this court in Hanson v. Kent & Purdy Paint Co., 36 Okl. 583, 129 P. 7 (and other cases of similar import) wherein we said:

"Instructions covering 20 pages of the record, in a case where the issues are few and simple, are open to serious criticism, as being too long, tedious, vague, and indefinite. Instructions should be plain, simple, concise, unambiguous, and consistent."

Even though defendants claim that the issues are few and simple (notwithstanding their numerous assignments of error) the record discloses that they requested 25 separate instructions which consumed 17 pages of the voluminous record, all of which were refused. But the substance of 15 of them was included in the court's instructions, yet defendants only make the general charge that the instructions to the jury were too long, tedious, vague and uncertain, tending to confuse and mislead the average jury. While the instructions were subject to criticism for the reasons urged yet some of the instruc-

tions were obviously invulnerable to objections. Where, in one assignment, error is assigned to all instructions, and any one of the instructions was properly given by the trial court, the assignment will be disregarded. Thompson v. Terrill, 186 Okl. 402, 98 P.2d 16, and cases cited therein.

Defendants' second proposition is that the trial court erred in giving instruction No. 39 relating to the failure of plaintiff to submit to a major surgical operation under an anesthetic which might possibly be fatal. The evidence shows that plaintiff sustained injuries to his back, leg and shoulder and a badly shattered fracture of the upper end of the bone of his left arm, and that he was hospitalized and his condition observed over a period of weeks by an orthopedic specialist who was of the opinion that plaintiff should return to the hospital where an operation would be performed on his shoulder, the bones aligned properly and the fragments of bone replaced and the specialist so advised the plaintiff. The plaintiff was also advised that his condition might be greatly improved if he would submit to such an operation, but plaintiff refused the operation.

It was shown by the attending orthopedic specialist that in his opinion plaintiff's disability to his arm and shoulder would have been materially decreased by an operation; that such operations were usually, but not always, successful but that there was always the possibility of it resulting in death.

No complaint is made to that portion of the instruction which advised the jury "that one cannot recover for damages he could have avoided by the use of reasonable means at his disposal", and that the plaintiff is required to use "due care in giving himself proper medical and surgical attention", but defendants assert that the probative value of this portion of the instruction was completely destroyed by the conclusion of the instruction wherein the jury was advised "that plaintiff, Jess Eppler, was not required to submit to a major surgical operation involving the risk of life, however slight, merely in order that the pecuniary interests created by law in his favor, and against the defendants, if

any, may be minimized." Defendants contend that this latter portion of the instruction is erroneous and constitutes reversible error.

The plaintiff used ordinary and reasonable diligence in securing medical and surgical aid after he was injured unless his refusal to submit to a major surgical operation which would generally, but not always, improve his condition, and which might result in his death, constitutes lack of ordinary and reasonable diligence or lack of due care.

■■ The law is well settled that it is the duty of a person injured by the negligence of another to use ordinary and reasonable diligence or due care in securing medical and surgical aid after receiving such injury. City of Duncan v. Nicholson, 118 Okla. 275, 247 P. 979; Updegraff v. City of Ottumwa, 210 Iowa 382, 226 N.W. 928; Bly v. Moores Motor Co., 145 Or. 528, 28 P.2d 627; Johnson v. Plunkett-Jarrell Grocer Co., 127 Ark. 243, 191 S.W. 929; White v. Chicago & N. W. Ry. Co., 145 Iowa 408, 124 N.W. 309; Benson v. Altoona & L. V. E. Ry. Co., 228 Pa. 290, 77 A. 492; Rowe v. Whatcom County Ry. & Light Co., 44 Wash. 656, 87 P. 921; Leitzell v. Delaware L. & W. Ry. Co., 232 Pa. 475, 81 A. 543, 48 L.R.A.,N.S., 114; Chicago & E. R. Co. v. Meech, 163 Ill. 305, 45 N.E. 290; but, as a matter of law, one who has been injured by the negligence of another is not bound to undergo a major surgical operation which would necessarily be attended with some risk of failure and of death, but such person must be permitted to exercise the liberty of choice in the matter, and his refusal to submit to an operation, although under the evidence it would probably lessen the effects of the injury, cannot be considered in mitigation of the damages recoverable therefor. See also Houston Electric Co. v. Schmidt, Tex.Civ.App., 244 S.W. 1110. While we have never had occasion to apply this rule in negligent personal injury cases, we have held that the State Industrial Commission is without jurisdiction to order the injured employee to submit to a major operation involving the risk of life however slight, merely in order

that the pecuniary obligations created by law in his favor against his employer may be minimized. Williams Theatres Inc. v. Mickle, 201 Okl. 279, 205 P.2d 513, and cases cited therein. The instruction as given did not constitute reversible error.

In defendants' third and fourth propositions they contend that the court erred in its admission of mortality and annuity tables in evidence and in admitting the evidence of a life insurance actuary explaining these tables and that the trial court incorrectly instructed the jury as to the law in submitting instructions Nos. 37 and 38 relative thereto, asserting that such evidence was not admissible, but that if it were, no proper foundation had been laid for the admission of this type of evidence and arguing that where such evidence is accepted the cases are generally death actions.

 While, as suggested by defendants, this Court has never passed upon the question of admissibility of annuity tables in personal injury cases and the decision on this point will be one of first impression, yet the weight of authority is that standard life and annuity tables, no matter where found, if properly established and authenticated, are admissible in evidence in personal injury cases of permanent partial (or total) destruction of the earning capacity of the person negligently injured, 19 R.C.L. Mortality Tables, Sec. 5, page 218, 20 Am.Jur., Evidence, Sec. 74, page 95, Sec. 99, page 113, Secs. 971–976, page 820, Sec. 1215, page 1066, and cases cited under these sections; and proper foundation has been laid for submission in evidence of mortality and annuity tables when such tables have been properly established and authenticated and there is some evidence tending to show that the injuries received were of a permanent character causing permanent partial destruction of injured person's earning capacity, or where the evidence is conflicting as to whether the injury received was of such character. Id.

 There being ample evidence to sustain the trial court's action on these matters, the admission of these tables in evidence was proper and instructions Nos. 37 and 38 having fairly covered these issues, giving such instructions was not error.

Defendants mostly rely upon McCaffrey v. Schwartz, 285 Pa. 561, 132 A. 810, to support their fourth proposition, and argue that the trial court in instruction No. 37 in a meager way tells the jury that plaintiff's expectancy of life is not controlling on them; that in instruction No. 38 the jury was told that if they found the issues in favor of plaintiff and awarded him damages he would not be entitled to recover as a lump sum at present of the total accumulations of his loss of earnings over the entire period of his life expectancy, but that such amount must be reduced or discounted on a basis of a fair rate of interest or return on such amount, asserting that both instructions are inadequate for the reason that the judge failed to instruct the jurors that it was their duty to determine from the evidence whether plaintiff's impairment of earning capacity would last until the end of his life expectancy or, if not, how soon it would change for the better and to adjust their award of damages, if any, on that basis, and further, that the judge also failed to advise the jury that in calculating the plaintiff's loss, if any, on an annuity basis, they should take into consideration the fact that the plaintiff might be disabled by illness, natural decline, or other causes from continuing to earn the income he was making at the time of the accident.

While the trial judge did not charge in the contingencies of illness and loss or impairment during the period of life, or the contingency of death prior to the time limit of expectation, evidence was introduced showing plaintiff's age, condition of health, earning capacity and life expectancy according to authenticated mortality tables and the jury was instructed (by instruction No. 41) that they might, in arriving at the amount of damages recoverable, take into consideration the age of plaintiff, the physical condition of plaintiff immediately before and after the accident;

the nature and extent of his injuries, if any; whether injuries, if any, are permanent; his probable loss of earnings, past and future, if any; the pain and suffering endured and to be reasonably suffered in the future.

They were also instructed that mortality and annuity tables were to be considered as evidence, but not as an absolute basis for their calculation and determination of the amount of damages and loss, if any, which the plaintiff was entitled to recover, if any, from the defendants but that such tables should be used as a guide only, along with all the other facts and circumstances brought to their attention during the trial and, only insofar as the facts before them corresponded to those from which such tables of annuity costs are computed; and on the question of damages, instruction No. 38 told the jury that if they found the issues in favor of the plaintiff, and awarded him damages for alleged loss of earning power that he would not be entitled to recover as a lump sum at present the total accumulation of such loss of earnings over the entire period of his life expectancy, but such sum, if any, by them awarded must be reduced or discounted on the basis of a fair rate of interest or return on such amount; that it was for them to determine from a preponderance of the evidence what rate of interest or return could fairly be expected from safe investments which a person of ordinary prudence, but without any particular financial experience or skill could make, and reduce or discount said sum or amount, if any, by them awarded to plaintiff, at such fair rate of interest or return as to them may appear reasonable and proper.

■ These instructions were sufficient in law and were properly given.

Defendants' suggested probabilities are such probabilities as are always counted among the vicissitudes of human life, and it may be assumed that the jury would not ignore the natural incidents of life which are common to all mankind. Mazziotte v. Bridgeport & Waterbury Passenger Service, Inc., 116 Conn. 32, 163 A. 409, 87 A.L.R. 908.

In this connection it is seriously contended that annuity tables are not admissible for the reason that such tables are more likely to confuse a jury than to enlighten them; that to expect a jury to determine dates and amounts and apply the tables to present values is expecting too much of the average jury, citing McCaffrey v. Schwartz, supra.

We cannot agree with this contention. The intelligence and fairness of the jury must be assumed or trial by jury becomes farcical. Neal v. Phoenix Lumber Co., 64 Wash. 523, 117 P. 267.

Defendants contend in propositions five and six that the verdict of the jury and the judgment based thereon against the L. C. Jones Trucking Company, a corporation, and L. C. Jones, individually, d/b/a L. C. Jones Trucking Company, is not sustained by the evidence and is contrary to law.

■ It is urged that the judgment against the defendant, L. C. Jones Trucking Company, a corporation, is void for the reason that the corporation was not in existence at the time of plaintiff's injuries. The record discloses that the corporate defendant was organized and incorporated October 9, 1948; that the accident occurred on June 14, 1948; that the corporation took over the individual business and all the assets of L. C. Jones d/b/a L. C. Jones Trucking Co., without consideration other than corporate stock issued to the individuals, including the use of the franchises or motor carrier permits formerly issued to L. C. Jones, individually, and the defendant L. C. Jones Trucking Company, a corporation, operated under them, and by an added endorsement on its policy, the public liability insurance carrier became the insurance carrier of the successor corporation; that all the assets of the new corporation were derived from the old L. C. Jones Trucking Company and that the new corporation remained under the same management; that the corporate president and manager is L. C. Jones, former owner of the old L. C. Jones Trucking Company; that, in fact, the business was continued in the same manner as be-

fore the incorporation and the new corporation was merely a continuation of its predecessor. However, it is contended, by the defendants, that we are not dealing with the merger of corporations, but are concerned with a case wherein an individual was engaged in the trucking business; that later the individual and others organized a corporation to conduct the same business; that under these circumstances the corporation does not become liable for an unliquidated tort, arising before the corporation was organized. Citing Burkholder v. Okmulgee Coal Co., 82 Okl. 80, 196 P. 679 and other cases of similar import in support of this contention.

We disagree. The mere fact that a corporation is organized to take over a business formerly conducted by a firm or individual is not of itself sufficient to render it liable for a debt incurred by such firm or individual in conducting such business. But where, as in the instant case, it appears that the property is simply transferred to the corporation without consideration other than corporate stock issued to the individuals and the business is but a continuation of the old and is conducted as before, under the same name and management, the corporation, so formed and operated, will be liable for the existing debts of the unincorporated entity, as it will be presumed that such debts were assumed. 13 Am.Jur., Corporations, Secs. 1248 and 1249. St. Clair Lime Co. v. Ada Lime Co., 196 Okl. 29, 162 P.2d 547; S. & J. Supply Co. v. Warren, 191 Okl. 683, 133 P.2d 201; Oklahoma Title Co. v. Burrus, 172 Okl. 94, 44 P.2d 852, 853, and cases cited therein; Fletcher on Corporations, Vol. 8, Sec. 4014; Thompson on Corporations, 4th Ed. Vol. 4, Sec. 2436, et seq.

■ While we have passed upon the question of assumption of debts (See above cases) this is the first occasion for determining such corporate entity's liability for torts of its predecessor. A tort liability of an individual, partnership or corporation is an indebtedness which may be enforced against a corporation which takes over the business and assets of its predecessor under the circumstances outlined above,

as the assumption of the liabilities of a predecessor includes tort liabilities, 13 Am. Jur., Corporations, Sec. 1253; Barnes v. Liebig, 146 Fla. 219, 1 So.2d 247.

We next consider the defendants' contention that the judgment against them is not sustained by the evidence. In this connection it is urged that plaintiff was a trespasser on the ramp, the property of defendants; that defendants' employees were not guilty of wanton and wilful negligence, and that defendants' employees could not have seen plaintiff in the position of peril which he voluntarily assumed and therefore owed him no duty whatever, citing numerous cases defining the duties and liabilities of an owner of premises as to trespassers.

■ Evidence was offered by plaintiff and defendants conforming with their pleadings which, of course, was in conflict on the issues, but from a careful examination of the whole record, including the evidence, we find that there was ample evidence to sustain the verdict of the jury and judgment based thereon, and, under the often repeated rule of this Court that if there is any evidence reasonably tending to sustain such verdict and judgment, the same will be affirmed on appeal, their contention of the insufficiency of evidence is untenable.

Defendants urge in proposition seven that the verdict of the jury in the sum of $31,000 is clearly excessive, is not sustained by the evidence and is contrary to law.

It is argued that the facts in this case show that the verdict is excessive and entirely disproportionate to the loss sustained.

■ Whether a verdict is excessive depends upon the particular facts and circumstances in the case. In the instant case the record shows that plaintiff was 46 years old, had a life expectancy of 23.81 years; that when he was injured he was drawing $80 per week or $4,160 per year, and it was alleged by reason of the permanent loss of earning power he had sustained damages of $50,000; that by reason of his pain and suffering he was damaged

further in the sum of $10,000. There was medical evidence that he sustained a 50 per cent permanent partial disability. This disability measured by the combined mortality and annuity tables, discounted to a net value shows that the verdict was not excessive. The highest figure testified to was $70,036, figuring the discount rate of interest at 1½ per cent. The verdict of $31,000 was less than 50 per cent of the highest figure. The jury was instructed to use as a guide a reasonable discount rate. The verdict reflects 50 per cent of the 2½ per cent discount rate was used, and this calculation would not include any amount for pain and suffering, present and future, or probable damages that might be reasonably attributed to his injury.

Defendants' authorities to sustain this proposition are decisions of this court prior to our announcements in the recent cases of Independent-Eastern Torpedo Co. v. Price, Okl.Sup., 258 P.2d 189, and John A. Brown Co. v. Clause, 205 Okl. 122, 235 P.2d 680. In paragraphs seven and eight of the syllabus of the Independent-Eastern Torpedo Co. case, supra, we said [258 P.2d 191]:

"Complaint that damages are excessive cannot be sustained by authorities or opinions written several years ago, as we do not consider them as a measure of damage in this time of the devaluated dollar, the higher individual earning capacity, and the modern tendency of allowing much larger verdicts to stand than were permitted a few years ago.

"In an action for damages for personal injuries sustained, the court will not set a judgment aside because of excessive damages, unless the amount awarded clearly shows that the jury was actuated by passion, partiality, or prejudice."

Under the facts herein we think the above quoted rule disposes of defendants' contention that the amount of damages was excessive.

In defendants' eighth proposition it is contended that the trial court erred in overruling their supplemental motion for a new trial.

It is noted that the trial of the case consumed approximately six days, beginning on April 2nd and ending April 6, 1951; that these separate lengthy motions for new trial were filed on behalf of L. C. Jones individually, L. C. Jones Trucking Co. and L. C. Jones Trucking Company, a corporation, and were overruled; that thereafter on October 20, 1951, the defendants filed their unverified supplemental motion for a new trial predicated upon the grounds of newly discovered evidence. To this motion was attached a copy of a petition filed in the District Court of Garvin County, Oklahoma, in cause No. 15,963, brought in behalf of Jess Eppler, plaintiff herein, which was signed by Wallace Hatcher as his attorney but which was not verified. The contents of their petition, if taken as true, would tend to impeach and discredit the evidence of plaintiff and other witnesses who testified concerning the degree and extent of plaintiff's injuries and resulting loss of earning capacity.

This motion was not properly before the court for two reasons. First, the supplemental motion based upon newly discovered evidence must be verified. Title 12 O.S.1951 § 654, and such motion, if not verified, will not be considered on appeal. Martin v. Hubbard, 32 Okl. 2, 121 P. 620; Zusman v. First State Bank of Lovell, 178 Okl. 330, 333, 63 P.2d 760. Second, newly discovered evidence to impeach or discredit witnesses is not ground for a new trial. Title 12, O.S.1951 § 651, Subd 7. Miles v. Pressley, 198 Okl. 124, 176 P.2d 473, and Hill v. Capitol State Bank, 178 Okl. 610, 63 P.2d 957.

The ninth and last proposition of plaintiff is that the trial court erred in permitting the joinder of the insurance carrier as a party defendant.

Defendants admit that beginning with the case of Temple v. Dugger, 164 Okl. 84, 21 P.2d 482, that this court has consistently held the joinder of an insurance carrier to be proper where the vehicle involved is operating as a motor carrier

on the highways of the State of Oklahoma. But they contend, first, that the decision of Temple v. Dugger, supra, is erroneous and misconstrues and misapplies certain provisions of the applicable statutes; second, that the truck which plaintiff alleges was involved in the accident was not at the time of the accident being driven on the highways of the State of Oklahoma as a motor carrier. Therefore, the joining of the insurance carrier constituted error. However, we have carefully read the argument contained in defendants' brief and reviewed the cases of this Court on the issues raised under this proposition, which included Temple v. Dugger, supra; Jacobsen v. Howard, 164 Okl. 88, 23 P.2d 185; Enders v. Longmire, 179 Okl. 633, 67 P.2d 12; Safeway Cab Co. v. McConnell, 181 Okl. 612, 75 P.2d 884; Graves v. Harrington, 177 Okl. 448, 60 P.2d 622; Be-Mac Transport Co., Inc. v. Lairmore, 191 Okl. 249, 129 P.2d 192; American Fidelity & Casualty Co., Inc. of Richmond, Va. v. Bennett, 182 Okl. 71, 76 P.2d 245; All American Bus Lines v. Saxon, 197 Okl. 395, 172 P.2d 424, and Jordan Bus Co. v. Garnand, 203 Okl. 623, 225 P.2d 173, 174. In the case last cited in answering the same argument (made by the attorney for defendants herein who was attorney for the motor carrier therein) we said in the syllabus, first paragraph:

"1. A joint action may be maintained against a motor carrier and its liability insurance bondsman under the provisions of 47 O.S.1941 § 169."

In the body of the opinion we said:

"(4) For their third contention defendants say that the trial court erred in permitting the insurance carrier to be joined with the bus company as a party defendant. They admit that this court has heretofore held that such joinder was proper but insist that such holding misconstrues 47 O.S.1941 § 169. We have consistently held to the contrary. In All American Bus Lines v. Saxon, 197 Okl. 395, 172 P.2d 424, we held that such joinder was proper, citing numerous prior decisions of this court so construing

the statute. In view of this uniform line of decisions we do not think the question is open to re-examination at this time."

In All American Bus Lines v. Saxon, supra, we said [197 Okl. 395, 172 P.2d 428]:

"There is no reason for departure from the rule stated in the Dugger case and many reasons for adherence to it."

Defendants' second contention under this proposition is without merit. McMahan v. McCafferty, 205 Okl. 656, 240 P.2d 443, 445.

The undisputed evidence in this case is that the trucking company was employed to move two heavy drilling motors from another location to the location where plaintiff was working at the time of his injuries, and that the truck hauling the motors in going to the well site would be off the highway, which was incidental to the transportation of the motors, and we believe that under these circumstances, the rule announced in the McMahan case, supra, applies. There in the body of the opinion, we said:

"(1) The defendants, in Proposition One, contend that the court erred in overruling their motions to dismiss on the theory that the defendant, McMahan, at the time of the alleged injury was not operating as a Class 'B' motor carrier, pursuant to the provisions of 47 O.S.1941, Sections 161 to 169, in that he was not using the public road or highway. This contention is without merit. The Tenth Circuit Court, in the case of Commercial Standard Insurance Co. v. Bacon, [10 Cir.], 154 F.2d 360, 363, in passing upon a similar situation says: '* * * It is not necessary, however, that the vehicle must be in actual operation or use upon the highway at the time the loss occurs in order to constitute an operation or use of the highway. It is sufficient if the operation or use of the vehicle from which the loss occurs has a proximate and necessary con-

.nection with an actual operation or ·use of the vehicle upon the highway."

From a careful consideration of all the facts and applicable law, we conclude that the judgment should be, and it is hereby affirmed.

CORN, DAVISON, ARNOLD and BLACKBIRD, JJ., concur.

O'NEAL, J., concurs in part, dissents in part.