CASUALTY RECIPROCAL EXCHANGE, a Reciprocal Insurance Exchange, Plaintiff in Error,

v.

WAGGONER DRILLING COMPANY, a Corporation, and S. R. Hazelrigg, d/b/a S. R. Hazelrigg Trucking Company, Defendants in Error.

No. 37869.

Supreme Court of O,klahoma.
March 17, 1959.

Rehearing Denied April 28, 1959.

Application for Leave to File Second Petition for Rehearing Denied June 16, 1959.

Green & Feldman, W. E. Green, Raymond G. Feldman, Wm. S. Hall, George A. Farrar, Tulsa, for plaintiff in error.

Loeffler, Loeffler & Allen, by David H. Loeffler, Bristow, for defendant in error, Waggoner Drilling Co.

Arthurs, Blackstock & McMillan, by Harry M. McMillan, Bristow, for defendant in error, Hazelrigg Trucking Co.

JOHNSON, Justice.

This action originates from the following facts which are now inherent in the judgment of the trial court, subject, however, to the laws governing appeals in general, and may be briefly summarized as follows:

Thomas J. Waggoner, the president of the Waggoner Drilling Company, employed the S. R. Hazelrigg Trucking Company, a "Class B Motor Carrier," to move its rotary oil well drilling rig from an oil and gas lease (the T. Williams lease) located 12 miles south of Bristow, Oklahoma, to the Briggs lease 7 miles north of Bristow. The new location was about one-fourth mile off the highway. The Hazelrigg Trucking Company pursuant to contract was to dismantle the rig on the Williams lease and transport it to and reassemble the rig on the new location. The rig had been transported to the Briggs lease where it was unloaded. The substructure of the rig was in place. The mast was in position to be raised. A line was run from the mast over an A-frame and to a winch on a Hazelrigg truck. Waggoner's daylight driller and three of Waggoner's derrick men, together with Hazelrigg's truck pusher and two of Hazelrigg's truck drivers were present. While the mast was being raised by the Hazelrigg winch into an upright position, to an angle of about 45 degrees, the drive chain on the Hazelrigg truck, though practically new, broke, and the mast fell to the ground resulting in the property damages in question.

The Hazelrigg Trucking Company had a liability insurance policy issued to it by the Casualty Reciprocal Exchange Company with limits of $25,000 for property damage. This was the only policy on which the Hazelrigg Company paid a premium; however, unknown to Hazelrigg the Casualty Reciprocal Exchange Company filed another policy of liability insurance with $1,000 limits for property damage covering Hazelrigg Company with the State Corporation Commission in accord with the statutes, 47 O.S.1951 §§ 161 to 169, through which Hazelrigg received its trucking permit as a "Class B Motor Carrier." Waggoner Drilling Company (upon these facts) brought suit for $6,555.46 damages to its equipment against the Hazelrigg Company, and by reason of the above

policies joined the Casualty Reciprocal Exchange Company as a party defendant.

In the jury-waived trial, defendant, Hazelrigg Company, interposed several defenses, which in substance were: (1) That the raising of the mast into position on the new location, although executed by the servants of Hazelrigg, was under the supervision and control of the plaintiff's employees. Therefore, any negligence on the part of Hazelrigg's employees in raising and damaging the mast was actually the negligence of the plaintiff who was in control of the operation. (2) That the raising of the mast into position on the new location was a necessary part of the entire operation of tearing down the rig at the old location, transporting the rig to the new location and setting the rig up in position for drilling at the new location. Therefore, the operation of raising the mast, during which the mast was damaged, had a proximate and necessary connection with an actual operation or use of the vehicle upon the highway; thus the insurance company should be held liable for any judgment rendered against Hazelrigg. (3) That the drive chain on Hazelrigg's winch which broke during the operation of raising the mast was a practically new chain which was not defective. (4) That the falling of the mast was not due to the breaking of the winch chain. That the true cause of the falling of the mast was due to the improper setting of the mast on the substructure. That this improper setting of the mast was called to the attention of the plaintiff's employee who was in charge of the operation but who dismissed the improper setting of the mast as unimportant. That the mast fell from the substructure thus placing a sudden increased strain upon Hazelrigg's winch which broke the winch chain.

The Casualty Reciprocal Exchange Company's defenses interposed in the course of the trial were (a) that the accident did not result from an operation or use of the truck on the highway, a condition required under the law as applied to its policy covering Hazelrigg Company as

filed with the Corporation Commission; (b) that the policy sued upon did not cover damages to or destruction or loss of cargo or property in possession of insured or for which the insured is legally responsible as carrier; (c) that the judgment against Casualty Reciprocal Exchange was erroneous, because based on a private contract of insurance rather than the statutory policy filed with the Corporation Commission.

After the close of evidence on these issues and overruling of the demurrers thereto, and at the conclusion of the trial, judgment was rendered in favor of the Waggoner Drilling Company and jointly against the Hazelrigg Trucking Company and Casualty Reciprocal Exchange for $3,305.46; and, although judgment was rendered jointly against both defendants, only Casualty filed a motion for a new trial or perfected an appeal. Thus the gravamen of this appeal is to be found in the above contentions of Casualty which it presents under four propositions.

Casualty's first proposition is that the trial court, though requested to do so, failed to make findings of fact and conclusions of law as required by Section 611, 12 O.S. 1951, which covered all facts material to support its conclusion.

This contention is without merit. The record does not disclose that Casualty has been denied any substantial right. The court found in substance that Hazelrigg and its insurance carrier (Casualty) became legally liable to the Waggoner Drilling Company through the use of a defective chain by Hazelrigg, the breaking of which caused the damage to Waggoner's mast, while in the process of transporting and reassembling and re-erecting the drilling rig as provided for by the statutory and contractual duties of Hazelrigg as a Class B Motor Carrier.

The rule applicable in the instant case is found in Roberts v. C. F. Adams & Son, 199 Okl. 369, 184 P.2d 634, 635. Therein in the first paragraph of the syllabus this court said:

"The test as to whether the court erred in refusing to make separate findings of fact and conclusions of law in a case tried to the court is whether under all the facts and circumstances the party requesting such finding has been denied a substantial right."

In the body of the opinion this court said:

"In the later opinions, this court has held that the trial court need not go to the extent earlier deemed necessary to comply with the provisions of 12 O.S.1941 § 611, in making findings of fact and conclusions of law upon request of a party litigant. The present rule, with citations of cases, is discussed in the case of Reed v. Richards & Conover Hardware Co., 188 Okl. 452, 110 P.2d 603, 604, wherein it is said: '* * * The court is not bound to make separate findings concerning immaterial facts nor is the court bound to find the material facts in any greater detail than is really necessary for the correct decision, by a higher court, of questions of law involved in the case. * * *'"

■ We think the findings on the material facts sufficient to determine the questions of law involved in the case.

Casualty's second proposition is "(T)hat the accident, not having resulted from an operation or use of the truck on the highway, the Trial Court did not have jurisdiction to hear and determine the suit as against Casualty Reciprocal Exchange."

■ From Casualty's argument it develops that the essence of this proposition is that the trial court erred in permitting the joinder of the insurance carrier as a defendant because the accident and resulting property damages occurred between ⅛ and ¼ mile off the highway and not on the highway, and that defendant Hazelrigg, a Class B Motor Carrier, was not at that time acting as such motor carrier.

The undisputed evidence discloses that the trucking company was employed to and did transport an oil well drilling rig and that the disassembling, loading, unloading, and reassembling of the oil rig and transporting it from one lease to another constituted one continuous act of transportation, and though the vehicle was off the highway at the time of the resulting damage, the operation or use of the vehicle in reassembling the oil well rig was incident to the transportation of the rig and had a proximate and necessary connection with the operation and use of the vehicle upon the highway within the meaning of 47 O.S.1951 §§ 161 to 169.

Casualty recognizes that this proposition has been before this court many times, and that we have held contrary to such contention. See Jones v. Eppler, Okl.1956, 266 P.2d 451, 460, 48 A.L.R.2d 333, and cited cases. The facts before us do not justify a distinction or the application of a different rule than that applied in Jones v. Eppler, supra.

An examination and comparison of the facts in the instant case with those in the Jones v. Eppler case, supra, reveals a very similar situation, and the rule adherred to there is applicable here. Therein we said:

"The undisputed evidence in this case is that the trucking company was employed to move two heavy drilling motors from another location to the location where plaintiff was working at the time of his injuries, and that the truck hauling the motors in going to the well site would be off the highway, which was incidental to the transportation of the motors, and we believe that under these circumstances, the rule announced in the McMahan case, supra [McMahan v. McCafferty, 205 Okl. 656, 240 P.2d 443], applies. There in the body of the opinion, we said:

" '(1) The defendants, in Proposition One, contend that the court erred in overruling their motions to dismiss on the theory that the defendant, McMahan, at the time of the alleged injury was not operating as a Class "B" motor carrier, pursuant to the pro-

visions of 47 O.S.1941, Sections 161 to 169, in that he was not using the public road or highway. This contention is without merit. The Tenth Circuit Court, in the case of Commercial Standard Insurance Co. v. Bacon, (10 Cir.) 154 F.2d 360, 363, in passing upon a similar situation says: " * * * It is not necessary, however, that the vehicle must be in actual operation or use upon the highway at the time the loss occurs in order to constitute an operation or use of the highway. It is sufficient if the operation or use of the vehicle from which the loss occurs has a proximate and necessary connection with an actual operation of use of the vehicle upon the highway." ' "

■ The third proposition presented by Casualty, in substance, is that the policy of insurance sued upon does not cover the risk in that the loss comes under damaged "cargo" or property in possession of insured or for which the insured is legally responsible as a Class B Motor Carrier; and not a hazard due to the use of the truck on the highway.

In the policy filed with the Corporation Commission covering Hazelrigg as a Class B Motor Carrier, Casualty agreed:

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, and caused by accident arising out of the *ownership, maintenance or use* of any motor vehicle in the insured's business described in the schedules of declarations." (Emphasis ours.)

■■ Obviously, under the facts hereinbefore narrated as now inherent in the judgment, Hazelrigg Company comes squarely within the above-quoted "coverage." However, Casualty contends that if it is a proper party defendant, and we hold that it was, Jones v. Eppler, supra, the

accident and resulting property damages were not covered by the policy because' of "Exclusions," to-wit: "Exclusions, paragraph 4" which excludes:

"Damage to or destruction or loss of cargo or property in the possession of the Insured or for which the Insured is legally responsible as 'carrier, warehouseman or bailee or which is owned by, rented to, occupied or used by the Insured;"

We do not agree. Under Sec. 169, 47 O.S.1951, supra, policies such as the one under consideration shall cover "loss or damage to property." This broad statutory provision, of course, becomes a part of the insurance policy in controversy and prevails over provisions of the policy to the contrary. Enders v. Longmire, 179 Okl. 633, 67 P.2d 12.

Casualty's fourth and last proposition is that the judgment against Casualty Reciprocal Exchange was erroneous because based upon a private contract of insurance rather than the policy filed with the Corporation Commission in accord with statutory provisions relating thereto.

Casualty, the defendant insurance company, admittedly filed with the Corporation Commission the policy (on which no premium was shown to have been paid) showing Hazelrigg to be covered for property damage liability in the sum of $1,000; and that it accepted the premium which is shown on the policy that it issued to the defendant, Hazelrigg, with property damage liability in the sum of $25,000. Both policies were issued on August 1, 1953, showing Hazelrigg to be covered as a motor carrier for hire. There was attached to each policy as required by the Corporation Commission of Oklahoma an "Amended Motor Vehicle Form 'E', Insurance Policy Endorsement," which in part provided:

"The policy to which this endorsement is attached is written under and pursuant to the provisions of the Laws of the State of Oklahoma requiring the same and it is to be construed in ac-

cordance therewith and the rules and regulations of the Corporation Commission of Oklahoma and implies an acceptance of such rules and regulations, and is payable to the State of Oklahoma for the benefit of all persons who may suffer personal injuries, including death, or property damage * * *."

This endorsement also included this provision:

"Provided, that the liability for damage to property under this policy shall not exceed one thousand ($1,000.00) dollars for any one accident, unless a larger amount is specified in this policy."

In addition to the Oklahoma endorsement, there was attached to the policy delivered to the plaintiff another endorsement, a portion of which provides:

"Public Liability and Property Damage Endorsement

The State Corporation Commission State of Kansas

"Docket No. 15600

"It is understood and agreed that the policy to which this endorsement is attached is written in pursuance of and such policy shall fulfill the insurance requirements of section 66–1.128, General Statutes of Kansas 1939 [1935], or as may be hereafter amended, and the rules and regulations of the State Corporation Commission adopted thereunder with respect to liability for injuries to persons * * * and for damage to property * * *. The obligations and promises of this endorsement, however, shall be effective only while the equipment covered by this policy is being operated within the State of Kansas."

In all material provisions the policies were identical with the exception of the limits of the property damage liability.

On the question of the policies issued by Casualty, the evidence shows that the defendant Hazelrigg, who was called as a witness by the plaintiff, testified that he knew nothing about a policy naming his trucking company as insured and having limits of property damage liability to $1,000; that he paid one premium (and the policies so indicate) to defendant insurance company and that on a policy which had limits of property damage liability in the sum of $25,000; that he had received a copy of the latter policy, but he had never received a copy of the filed policy before the suit was brought against Casualty.

J. Paul Davis, called as a witness by the plaintiff, testified that he was an insurance agent; that during the period in question the defendant Hazelrigg was buying liability insurance only through him; that the defendant Hazelrigg purchased plaintiff's Exhibit 1 (a policy) showing property damage liability of $25,000 through him; that he had not seen plaintiff's Exhibit 2, which was the filed policy showing property damage limits of $1,000; that he knows that some insurance companies, after issuing the insured a policy showing the actual limits of liability which the insured has purchased, then file with the regulatory board a policy which shows only the minimum coverage which the board may require; the insured pays only one premium and that on the actual limits which he has purchased. No attempt was made by Casualty or anyone else to refute this evidence concerning the policies.

It is argued in defense against Casualty's contention that a policy of insurance whether public or private to be a policy of insurance must have two parties thereto: an insurer and an insured. That is this case there was but one policy of insurance, that being the one showing the actual property damage liability limits of $25,000 which Mr. Hazelrigg purchased. The filed policy then showed only an insurer and no bona fide insured and must be considered a sham, filed by the insurance company for the obvious purpose of discouraging lawsuits and concealing from the public the true amount of the coverage; that to

allow the insurance company to take advantage of a technicality of its own making would be a poor precedent and a gross miscarriage of justice, arguing that this court should pierce such veil created by the insurance company for its own protection and to outwit the public and to hold the insurance company liable for the full extent of the judgment against Hazelrigg. In this connection, however, Casualty argues that the policy that was filed with the Corporation Commission with limits of $1,000 for property damage, which admittedly met the requirements of the Corporation Commission and which was introduced in evidence as plaintiff's Exhibit 2, governs its liability, asserting that the suit was predicated upon a contract of liability insurance between the defendant Hazelrigg and Casualty which had coverage of $25,000 property damage and which was not filed of record with the Corporation Commission, and which therefore was purely a private contract between the parties, asserting that the question thus presented had never been ruled on by this court, and it cited no authority on the issue.

■ After a careful examination of the entire record and in view of our holdings on plaintiff in error's other propositions, we, on this last proposition, apply the rule of this court that where an assignment of error is presented in the brief, but unsupported by authority, such assignment will not be considered by this court on appeal unless it is apparent without further research that it is well taken. East Basin Oil & Uranium Company v. Pound, Okl., 321 P.2d 694. It is not apparent without further research that Casualty's fourth proposition or assignment of error is well taken. Therefore, we will indulge in the presumption that the trial court's decision is correct under these circumstances.

The judgment of the trial court is affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and HALLEY, BLACKBIRD, JACKSON, IRWIN and BERRY, JJ., concur.