Dear Mr. Boyd,
The Attorney General has received your request for an official opinion asking, in effect:
 Is a successor corporation eligible to be granted an organization license to conduct horse racing if the predecessor corporation has been convicted of a felony prior to the submission of the successor corporation's application?
Your question concerns the application of the Oklahoma Horse Racing Act (The Act), 3A O.S. 205.3(1)(a) (1985) to a request for an organization license to conduct horse racing under the pari-mutuel system of wagering.
Initially the purpose and intent of the Act should be noted. 3AO.S. 203.7 of the Act states, in pertinent part:
 "In the interest of the public health, safety, and welfare, it is hereby declared to be the purpose and intent of the Oklahoma Horse Racing Act to vest in the Commission plenary power to promulgate rules and regulations for the forceful control of race meetings held in this state. The rules and regulations shall:
* * *
 "3. dissipate any cloud of association with the undesirable and maintain the appearance as well as the fact of complete honesty and integrity of horse racing in this state." (Emphasis added).
These intentions are also articulated in 3A O.S. 204 of the Act, "Powers and duties of Commission," which states:
"A. The Commission shall:
* * *
 "12. have the authority to exclude, or compel the exclusion, from any race meeting:
* * *
 "b. any person who has been previously convicted of violating any law of this state, any other state, or the United States, or
 "c. any other person, licensed or unlicensed, whose conduct or reputation is such that his presence at the race meeting may, in the opinion of the Commission reflect on the honesty and integrity of horse racing."
Further, 3A O.S. 205.2a of the Act states, in part:
 "Under no circumstances shall the Commission give such approval [for an organization license] to any person who has been convicted of a felony or a crime involving moral turpitude, unless said person has been granted a full and unconditional pardon. Under no circumstances shall the Commission give such approval to any person who has violated any of the provisions of the racing laws of this state or any other state, or has at any time been denied a license or permit of any kind by the Commission."
See also, 3A O.S. 205.2(C) (1985).
It is clear from a review of the statutes that the legislative intent when drafting the Oklahoma Horse Racing Act was to give the Commission broad latitude to maintain the honesty and integrity of the sport by excluding undesirable, corrupt, incompetent, dishonest, and unprincipled persons and practices. Oklahoma Park, Inc. v. Oklahoma Horse RacingCommission, 57 O.B.A.J. 780 (Okla. March 25, 1986); 3A O.S. 203.7, 3AO.S. 204, 3A O.S. 205.2a (1985). More specific to your question, 3A O.S.205.3(1)(a), states, in pertinent part:
"No organization license shall be granted:
 "1. to any applicant if the applicant or a person owning an interest in the applicant:
"a. has been convicted of a felony."
Initially, it should be noted the term "person" as used in 3A O.S.205.3(1)(a) may include corporations. See, State, Etc. v. HillcrestInvestments, Limited, 630 P.2d 1253, 1256 (Okla. 1981).
While the Commission must deny an organization's request for a license if the applicant has been convicted of a felony, 3A O.S. 205.3(1)(a) does not discuss the effect of a prior felony conviction of a predecessor corporation on the application of its successor. Since there is no specific prohibition in 3A O.S. 205.3(1), the question upon application by the successor becomes whether the successor corporation is sufficiently removed from the convicted predecessor corporation to be granted an organization license.
There is no Oklahoma case law directly addressing this question. However, a review of other authority may shed some light on this question.
It is established law in Oklahoma that surviving corporations may be held liable not only for the debts but also for the torts of their constituent corporations. Investors Preferred Life Insurance Company v.Abraham, 375 F.2d 291, 294 (10th Cir. 1967); Jones v. Eppler, 266 P.2d 451,458 (Okla. 1953); Skirvin Operating Company v. Southwestern ElectricCompany, 174 P. 1069 (Okla. 1918). In determining whether successor corporations are liable, the Courts have looked at the specific facts in each case.
In Skirvin Operating Company, supra, the Skirvin Operating Company took over the assets, goodwill, and business of the Skirvin Hotel Company. The question of fact was whether such acquisition was by virtue of a sale or a merger. The Supreme Court found the Skirvin Operating Company did indeed merge with the Skirvin Hotel Company and was therefore answerable for all the liabilities of the former.
The Court arrived at the following conclusions:
 "1. That the Skirvin Operating Company was promoted, incorporated, and controlled by substantially the same stockholders and officers as the Skirvin Hotel Company.
 "2. That the Skirvin Operating Company came into possession of the entire assets and business of the Skirvin Hotel Company without paying any adequate compensation therefor.
 "3. That the Skirvin Operating Company is in law and in point of fact merely reincarnation of the Skirvin Hotel Company.
 "4. That the transfer of the assets of the Skirvin Hotel Company to the Skirvin Operating Company was merely a merger in fact, although the corporate existence of the Skirvin Hotel Company might continue, and that the new corporation was created merely for a continuation of the business of the original one." 174 P. at 1072.
Further, in Okmulgee Window Glass Company v. Frink, 260 F. 159 (8th Cir. 1918), Okmulgee Glass was sued as an alleged successor to the Coffeyville Window Glass Company who breached a contract with Plaintiff. The lower court found for Plaintiff and on appeal the 8th Circuit held:
 "We have carefully examined the entire evidence, and are convinced that the Coffeyville Company was merged in and absorbed by appellant [Okmulgee Window Glass Company], which is really nothing more than a continuation of the Coffeyville Company. The arrangement was as follows: The organization by the same individuals of a new company (appellant), with the same amount of capital stock, to be paid for by the assets of the old company (Coffeyville Company), for the sole purpose of continuing the same character of business with the assets of the old company; a transfer to the appellant [Okmulgee Glass] of the assets of the old company; assumption of the indebtedness of that company by appellant [Okmulgee Glass]; exchange of stock, share for share. The legal result of such transaction is to impose upon appellant [Okmulgee Glass] liability, up to the value of such assets, to the creditors of the Coffeyville Company." (Citations omitted). 260 F. at 161. (Emphasis added).
Lastly, in Jones, supra, defendants contended the verdict of the lower court against L.C. Jones Trucking Company, a corporation, and L.C. Jones, individually, was void for reason that the corporation was not in existence at the time of Plaintiff's injuries. The Plaintiff was injured on June 14, 1948, and the corporation organized and incorporated on October 8, 1948. However, the record also disclosed:
 "The record discloses . . . that the corporation took over the individual business and all the assets of L.C. Jones d/b/a L.C. Jones Trucking Co., without consideration other than corporate stock issued to the individuals, including the use of the franchises or motor carrier permits formerly issued to L.C. Jones, individually, . . . that all the assets of the new corporation were derived from the old [company] and that the new corporation remained under the same management; that the corporate president and manager is L.C. Jones, former owner of the old [company]; that, in fact, the business was continued in the same manner as before the incorporation and the new corporation was merely a continuation of its predecessor." 266 P.2d at 457.
The Court stated the mere fact a corporation is organized to take over a business formerly conducted by a firm or individual is not in itself sufficient to render it liable for a debt but, where:
 "it appears that the property is simply transferred to the corporation without consideration other than corporate stock issued to the individuals and the business is but a continuation of the old and is conducted as before, under the same name and management, the corporation, so formed and operated, will be liable for the existing debts of the unincorporated entity, as it will be presumed that such debts were assumed." (Citations omitted). 266 P.2d at 458.
Therefore, under Oklahoma law, depending on an analysis of the specific facts, corporations may be held liable for the debts and also the torts of their predecessor corporations. As to whether such liability would include a felony conviction by predecessor corporations, we turn to other jurisdictions for guidance. In United States v. Cigarette MerchandisersAssociation, Inc., 136 F. Supp. 214 (S.D.N.Y. 1955), defendants were charged with violations of the Sherman Act. The court found rights of creditors of any constituent corporation would not be impaired, nor would any "liability" or "obligation" due or to become due, nor would any claim or demand against the corporation be released or impaired by consolidation. Further, no action or proceeding in which any constituent corporation was a party would abate or be discontinued by reason of consolidation. The court stated:
 "And unless the legislative purpose to abate a criminal prosecution is clear and unequivocal, the public policy of the state to hold a corporation liable for acts committed during its existence should not be defeated by dialectical definitions which serve to discriminate against the community at large.
 "To limit `action or proceeding' to civil suits would result in anomalous situations." 136 F. Supp. at 217.
Accordingly, the court held the liability or obligation which followed the corporation included penalties of fines imposed for violations of the Sherman Antitrust Statute and quasi-criminal actions or proceedings. Seealso, A.G. Opin. No. 83-250.
Also, in United States v. Polizzi, 500 F.2d 856 (9th Cir. 1974), the defendant, as surviving corporation, argued it could not be prosecuted for crimes allegedly committed by the constituent corporation. The Court of Appeals disagreed, stating:
 "While no court has decided whether `liabilities' and `obligations' as used in [the New York statutes] refer to criminal liabilities and obligations, two courts have held that these words . . . do refer to criminal liability.
 "We therefore hold that the first sentence of the New York statute permits the maintenance of a prosecution against the surviving corporation for crimes allegedly committed by a constituent corporation." 500 F.2d at 908.
In Oklahoma surviving corporations may be held liable for debts and also torts of their constituent corporations. Also, although there is no Oklahoma case law as to whether such liability would include a felony conviction by a predecessor corporation, other jurisdictions have found that it may, depending upon specific factual determinations.
In conclusion, in reviewing an organization's application for a license to conduct horse racing, the Commission has certain criteria, standards, and guidelines it must follow. The Rules of Racing, Pari-Mutuel Edition, Article II, 3A O.S. 204, include 16 separate topics which set forth the criteria, standards and guidelines to be applied and considered by the Commission, and which reflect the purpose and intent of the Horse Racing Act. In considering applications, therefore, the Commission must apply the statutory considerations as well as 204 of the Rules of Racing to the facts of each case and make a factual determination as to the applicant's qualifications. In considering the application of a corporation under the circumstances described in your question, the Commission would also look at factors such as those considered by the courts discussed above to determine whether the corporation is eligible for a license. These factors include, but are not limited to:
 1. Was the successor corporation promoted, incorporated, and controlled by substantially the same stockholders and officers as the predecessor corporation;
 2. Did the successor corporation come into possession of the entire assets of the predecessor corporation without paying adequate compensation;
 3. Is the successor corporation in law and in point of fact merely a reincarnation of the predecessor corporation;
 4. Did a transfer of the assets of the predecessor corporation to the successor corporation take place;
 5. Did the transfer of assets from the predecessor to the successor corporation create merely a continuation of the business of the predecessor;
 6. Was the organization of the successor corporation carried out by the same individuals as organized the predecessor corporation;
 7. Did the successor corporation assume the indebtedness of the predecessor corporation;
 8. Was there an exchange of stock share for share;
 9. Was the management of the successor corporation the same as was present under the predecessor corporation; and
 10. Was the business continued in the same manner as before?
Based on 3A O.S. 204 of the Rules of Racing and upon applicable statutes and case law, the question whether a successor corporation is sufficiently removed from the felony conviction of the predecessor corporation is a question of fact to be determined after review of numerous elements. These factual issues cannot be addressed and resolved in an official Attorney General Opinion.
It is, therefore, the official opinion of the Attorney General that asuccessor corporation may be eligible for an organization license toconduct horse racing, pursuant to 3A O.S. 205.3(1) (1985), if thesuccessor is sufficiently removed from the predecessor corporation whichhas been convicted of a felony. However, whether the successorcorporation is sufficiently removed from the convicted predecessorcorporation is a question of fact and cannot be resolved in an AttorneyGeneral Opinion. Rather such decision should be made by the Horse RacingCommission based on the specific facts associated with any givenapplication.
MICHAEL C. TURPEN, ATTORNEY GENERAL OF OKLAHOMA
P. KAY FLOYD, ASSISTANT ATTORNEY GENERAL