ROCK ISLAND OIL COMPANY, a Division of Koch Industries, Wichita, Kansas, Plaintiff in Error,

v.

J & E HOT OIL SERVICE and Hardware Mutual Casualty Company, Defendant in Error.

No. 43553.

Supreme Court of Oklahoma.

Feb. 9, 1971.

As Corrected on Denial of Rehearing Oct. 5, 1971.

Alex Cheek and C. Cornett of Cheek, Cheek & Cheek, Oklahoma City, Wilson Wallace, Ardmore, for plaintiff in error.

Fischl, Culp & McMillin, by Joseph M. Culp, Ardmore, for defendants in error.

Howard K. Berry, Jr., Oklahoma City, amicus curiae for Oklahoma Trial Lawyers Assn.

Elliott C. Fenton, Oklahoma City, amicus curiae for Oklahoma Assn. of Defense Counsel.

IRWIN, Justice.

The issue presented in this appeal concerns the right to join a liability insurance carrier as a party defendant in a tort action against a Class B Motor Carrier, where the motor carrier's permit had been issued pursuant to the provisions of 47 O.S.1961, § 169, as amended; and the accident forming the basis for the tort action occurred on the premises of the motor carrier.

J & E Hot Oil Service (Carrier) obtained liability insurance as required by § 169, supra, and it was issued a Class B Motor Carrier's permit. Hardware Mutual Casualty Company is Carrier's liability insurance bondsman. Rock Island Oil Company (Rock Island) sought to join the insurance company as a party defendant in a tort action against Carrier. On consideration of a pleading which had the effect of challenging the right to join the insurance company as a party defendant, the trial court dismissed the action against the insurance company and Rock Island perfected this appeal. We reverse the order of the trial court dismissing the insurance carrier as a party defendant.

Carrier defended the joinder of the insurer on the grounds that the accident giving rise to the tort action occurred on its own private property; and that Carrier was not operating under its permit as a common carrier at the time of the accident but was engaged in an activity over which the Corporation Commission exercises no jurisdiction. Basically, Carrier argues that under the facts and applicable law, its insurer is not a proper party defendant in the tort action against it.

The record discloses that Carrier operates a "tank truck Company" and a "hot-oil service" under the name of J & E Hot Oil Service. The owner of Carrier testified in his deposition that "we hot oil wells and treat oil and steam tubing and haul oil, salt water and mud. * * *"; and "I guess you would call it a service company. We just—go out and perform jobs under the foreman's or superintendent's orders, you know. They tell us what they want done and we do it." The owner further testified that Carrier had a Class B permit to operate his trucks and was required to obtain the permit from the Corporation Commission in order to get his authority to operate.

Carrier was conducting its "hot oil" service at the time of the accident. In conducting its "hot oil" service, Carrier uses a "hot oil" unit which consists of a box or boiler, a pump and other equipment mounted on a truck. Oil or salt water is pumped into the box or boiler and is heated. The heated oil or salt water is used in dissolving paraffin, heavy oil or sediments in oil wells which has prevented the normal pumping or flowing of oil in the well. The "hot oil" unit is also used in dissolving heavy oil, sediment or other thick substances in oil tanks and the dissolution of those matters has the effect of cleaning a tank. Carrier could move the "hot oil" unit to any location or place where its "hot oil" service was needed by mounting it on a truck.

Rock Island had been hauling heavy crude oil in one of its tanks and made arrangements with Carrier to clean the tank by using its "hot oil" unit. Carrier's employee drove the truck with the "hot oil" unit mounted on it to a waste pit located in a pasture which is a part of Carrier's operations. The truck on which this "hot oil" unit was mounted was listed as one of Carrier's operating vehicles in its Class B Motor Carrier's permit. Rock Island brought its tank truck to the waste pit. A fire occurred as Carrier was heating salt water and pumping it into Rock Island's tank truck. The damages resulting from this fire form the basis for this action.

This Court has heretofore construed § 169, supra, in connection with the right to join the insurer as a party defendant in a tort action against the insured carrier. In Wray v. Ferris, 187 Okl. 428, 103 P.2d 942, we held that under § 169, supra, a motor carrier and its liability insurance bondsman are jointly liable for injuries to persons resulting from the negligent operation of

a motor carrier and a joint action may be maintained against them. In Wray, a truck belonging to an operator of a motor freight line was involved in a collision on a highway and this Court approved the joinder of the carrier's insurer.

In Jones v. Eppler, Okl., 266 P.2d 451, we said:

"Under liability policy issued to Class B Motor Carrier under permit from Oklahoma Corporation Commission covering injury due to negligence of insured or his employees in 'operation or use' of vehicle, to be within coverage of policy, loss must result from use or operation of licensed vehicle upon highway, but vehicle need not be in actual operation or use upon highway at time loss occurs; it being sufficient if operation or use from which loss occurs has a proximate and necessary connection with actual operation or use of vehicle upon the highway. 47 O.S.1951 §§ 161 to 169."

In the above case the carrier was employed to move two heavy drilling motors from one location to another location. We approved the joinder of the insurer as a party defendant. In that case it was argued the insurer could not be joined as a party defendant because the accident did not occur on the highway.

In Casualty Reciprocal Exchange v. Waggoner Drilling Co., Okl., 340 P.2d 490, it was argued that since the accident occurred off the highway the holder of the Class B Motor Carrier's permit was not acting as a motor carrier at the time of the accident and the joinder of the insurer was not proper. We approved the joinder of the insurer as a party defendant and said:

"The undisputed evidence discloses that the trucking company was employed to and did transport an oil well drilling rig and that the disassembling, loading, unloading, and reassembling of the oil rig and transporting it from one lease to another constituted one continuous act of transportation, and though the vehicle was off the highway at the time of the resulting damage, the operation or use of the vehicle in reassembling the oil well rig was incident to the transportation of the rig and had a proximate and necessary connection with the operation and use of the vehicle upon the highway within the meaning of 47 O.S.1951 §§ 161 to 169."

Carrier argues that the above cases would not authorize the joinder in the case at bar because at the time of the accident it was operating its "hot oil" unit on its own private property; that the operation is not an activity which was included in its motor carrier's permit or an activity over which the Corporation Commission exercises any control; and that the law does not require it to file a policy of liability insurance for the operation of its "hot oil" unit.

Carrier's argument is based on the rule announced in Subscribers at Casualty Reciprocal Exchange v. Sims, Okl., 293 P.2d 578, wherein we held that the voluntary filing of an insurance policy or bond not required by law does not render the insurer liable in a negligent action against the insured, since joint liability of insured and insurer arises only by operation of law and not by reason of the insurance policy or bond.

We find no statutory authority which would require Carrier to obtain a Class B Motor Carrier's permit before it could operate its "hot-oil" service on its own premises. However, Carrier's operation of its "hot-oil" service was not confined to its own premises but was conducted wherever its services were required. It was a part of its over-all operations as a service company to "hot-oil wells, and treat oil and steam tubing and haul oil, salt water and mud." The Motor Carrier's permit was issued to Carrier to conduct its over-all operations. The insurance policy covered Carrier's over-all operations of its service company and included in the policy were the vehicles used for its "hot oil" service.

In Jacobsen v. Howard, 164 Okl. 88, 23 P.2d 185, we said:

"* * * The statute binds the liability insurance bond maker to make compensation for injuries to persons resulting from the operation of the bonded motor carrier. Such a liability insurance bond is for the benefit of the motor carrier only in so far as it enables the motor carrier to procure a certificate of convenience and necessity for the operation of his business. Otherwise it is for the benefit of the person injured, and the person injured is entitled to recover the amount of his damage from the liability insurance bond maker not exceeding the amount of the bond, and, since that liability insurance bond is required to be filed with the Corporation Commission of the state by the motor carrier, the motor carrier is a party thereto as a matter of law. * * *."

Carrier secured the liability insurance bond to obtain its motor carrier's permit to operate its service company. Part of its services was its "hot oil" service and it was conducting this service when the accident occurred. In our opinion, neither Carrier nor its insurer may not say that when the accident occurred, it was not operating its service company for which the permit was issued.

Under the authority of Wray, supra, Carrier's insurer would have been a proper party defendant if Carrier had been involved in an accident while traveling upon the highways in furtherance of its "hot oil" service. In our opinion, if Carrier, in conducting its "hot oil" service, had moved its "hot oil" unit to the premises of Rock Island and the accident had occurred, under the authority of Jones v. Eppler and Casualty Reciprocal Exchange v. Waggoner Drilling Company, supra, Carrier's insurer may have been joined as a party defendant.

Under § 169, supra, an insurer is obligated "to make compensation for injuries to, or death of, persons, and loss or damage to property, resulting from the operation of any such motor carrier for which such carrier is legally liable; * * *." If the insurer's liability would extend to the operation of the motor carrier while it was moving upon the highways and to its operations while on the premises of another, the insurer would not be exonerated of liability because it was being operated on the premises of the insured. This is so because insurer's obligations extend to losses "resulting from the operation of any such motor carrier for which such carrier is liable", and there is no limitation on the place of operation. Any other construction of the above proviso would be placing an unwarranted and an unjustifiable limitation upon the clear language employed.

When a Class B Motor Carrier's permit is issued which authorizes the carrier to perform certain services, the carrier's liability, as a motor carrier, does not cease upon its entering its own premises for the performance of the services for which the permit was issued. The fact that Carrier in the case at bar may not have been required to obtain a motor carrier's permit to conduct its "hot oil" service on its own premises is immaterial since Carrier was operating its "hot oil" service under its permit as a Class B Common Carrier at the time of the accident. Since Carrier would be liable as a motor carrier, we hold Carrier's insurer is obligated as its liability insurance bondsman. The insurer being obligated, Rock Island was entitled to join insurer as a party defendant in the tort action against Carrier.

Judgment reversed.

BERRY, C. J., DAVISON, V. C. J., and JACKSON, HODGES and LAVENDER, JJ., concur.

WILLIAMS, BLACKBIRD and McINERNEY, JJ., dissent.

McINERNEY, J. (dissenting in part).

I concur in the principle of law announced in the syllabus, but I do not agree that its application is appropriate to the circumstances of this case. There is no statute requiring a permit to conduct

the hot oil service and I do not believe that the activity which forms the basis of the joinder is a part of the overall operations of the motor carrier. For this reason, I dissent from the majority opinion.

I am authorized to state that Justice Blackbird concurs in these views.