WESTERN CASUALTY AND SURETY COMPANY, a Corporation, Plaintiff in error,

v.

J. R. ADAMS, INC., a Corporation, and Richard Allen d/b/a Allen's Welding and Trucking, Defendants in error.

No. 42562.

Court of Appeals of Oklahoma, Division No. 90.

Jan. 27, 1970.

Robert A. Jackson, and Rhodes, Hieronymous, Holloway & Wilson, Oklahoma City, for plaintiff in error.

Carl E. Moslander, Oklahoma City, for defendant in error J. R. Adams, Inc.

Jake Hunt, Oklahoma City, for defendant in error Richard Allen d/b/a Allen's Welding and Trucking.

MILLS, Judge.

This is an appeal from the rendition of a judgment against a Class "B" Carrier, and the insurance company insuring said carrier, for damages to personal property, machinery, caused by the negligence of said carrier.

Defendant in error J. R. Adams, Inc., described herein as Adams, sued the defendant in error Richard Allen, doing business as Allen's Welding and Trucking, described herein as Allen, for $7548.22, alleging Adams hired Allen to transport an asphalt stabilizer to a construction job; that Allen while doing so, negligently drove the Stabilizer into and collided it with a highway overpass severely damaging it for which Adams asked judgment. Adams filed an amended petition and made plaintiff in error Western Casualty and Surety Company, described herein as Western, an additional defendant. In this amended petition, in addition to the allegations in the original petition, plaintiff alleged that Allen was a Class "B" Carrier, that Western had insured Allen as a Class "B" Carrier, attached a copy of the insurance policy, and asked for a judgment against both Allen and Western.

Allen answered, denying any negligence, and admitted he furnished a truck and driver for Adams, but stating that the driver was at all times acting as an employee of Adams. He asked that plaintiff take nothing in the case. Allen in an amended answer and cross-claim, realleged the matters in his answer, and for cross-claim against his co-defendant Western alleged that he had procured the policy of insurance, pled by plaintiff. Allen charged that under the terms of this policy and in the event that plaintiff recovered a judgment against him, that Western was obliged to pay the amount of any such judgment, together with all expense incurred by him, Allen, in defending this lawsuit, including a reasonable attorneys fee, and he asked for judgment in such event.

A jury having been waived, the Trial Judge having tried the case, rendered a

judgment against Allen and Western on Adams' claim in the sum of $6,068.22, and a judgment on Allen's cross-claim for attorneys fees and expenses against Western for $1,168.94 and also for Allen's witness fees and travel expenses of $88.00. Western appealed.

■ The first contention made by Western for reversal is that the Court was requested to make separate findings of fact and conclusions of law and refused to do so. Western's attorney, apparently before the Trial Judge announced his judgment, did request a hearing as to the form of the judgment, and after judgment orally asked the Judge to be more specific as to the legal effect of certain evidence. But there is no request for findings in the record. Nor is there anything in Western's motion for a new trial about such a request having been made and denied. Our Court has held many times that under 12 O.S.1961, sec. 611, which provides for findings by the Trial Judge, that the request for findings must be made before judgment is rendered, must be called to the attention of the Trial Judge, and if refused, the action of the Judge must be excepted to and such refusal alleged as error in the motion for a new trial. In re Miller's Estate, 182 Okl. 534, 78 P.2d 819; Gulley v. Christian, 198 Okl. 167, 176 P.2d 812.

Western next declares that the driver of the truck, at the time of the damage to the Stabilizer, was a loaned or hired servant under the absolute and complete control of Adams.

■ The Stabilizer, the machine that was damaged, owned by Adams, is used in the mixing and laying of asphalt in building black-top roads. A special permit is needed for moving it on a highway for it is over-width, over-heighth, and over-weight. It rests, when in transit, on a trailer pulled by a truck-tractor. It was being pulled by Adams truck, driven by . Adams driver, on the highway near Perry, when the clutch on that truck failed. Another employee of Adams in a pick-up

truck had accompanied the Stabilizer and helped to remove this truck. Allen, in Perry, was then employed to furnish a truck-tractor and a truck driver, at a charge for both of $12.25 per hour, to pull the trailer, on which the stabilizer rested, to its original destination "somewhere" near McLoud. Adams two employees did not know exactly the destination of the stabilizer, except that it was to be left near McLoud, and they had to find out exactly where after they reached McLoud. When Allen's driver, driving Allen's truck and pulling the Stabilizer started for McLoud, he was told that Adams employees, both now in the pick-up truck, would tell him where to leave the Stabilizer when they had found the right place to do so. These directions were the only directions or attempted control exercised by Adams employees over Allen's driver. By these acts Allen's driver did not become a servant of Adams. A. K. McBride Const. Co. v. Arkhoma Steel Erection Co., Okl., 348 P.2d 541.

Western's next ground for reversal is that the Trial Judge erred in the assessment of damages for the loss of use of the stabilizer.

■ The stabilizer had a value of between eighty five and ninety two thousand dollars. The amount of temporary repairs that were necessary by reason of the accident was $495.00. The evidence was undisputed that this machine earned $3000.00 per day, and that as a direct result of the accident, it, and from eight to ten employees of Adams were delayed on this job for one and one-half days. The judgment was for $6048.22.

The evidence was definite and undisputed as to the value of the loss of use of the stabilizer pending the repairs to it, made necessary by the accident. It was established by tangible facts from which actual damages could be logically and legally inferred. Weleetka Light & Water Co. v. Northrop, 42 Okl. 561, 140 P. 1140; Carpenters Local etc., v. Wallis, 205 Okl. 285, 237 P.2d 905; Carthage Transfer

& Storage Co. v. Paulzer, 110 Okl. 125, 236 P. 410; 22 Am.Jur.2d, "Damages", #153, p. 221.

Western asserts that the Court erred in overruling its plea in abatement, demurrer and motion for judgment under Rule 36 (13).

█ Western states that the terms of its policy of insurance clearly except any liability on its part, under the facts in this case. It alleges that the Trial Judge should have rendered judgment for it as a matter of law on demurrer to the amended petition, and inevitably should have done so on its motion for a summary judgment. The portion of the policy in this connection provides:

"This policy does not apply

"(j) under coverage C (Property Damage Liability), to injury to or destruction of * * * (3) * * * property in the care, custody, or control of the insured or property as to which the insured for any purpose is exercising physical control."

Western also maintains that since its insured Allen was a Class "B" Carrier under the statute, 47 O.S.1961, sec. 169, and its policy having been issued to Allen as such, and that this policy contains the Form "E" endorsement of the Corporation Commission, and which is a part of the policy, that this provision bars any liability to Adams, under the alleged facts. The Form "E" endorsement is as follows:

"It is agreed and understood that the words "Damages to Property" as used in this endorsement shall be construed to cover any and all property (except property of such insured, or carried in or on the motor vehicle belonging to or controlled by the insured)."

The right of Adams to join Western as a party defendant is conceded. The controlling question is, do the above quoted provisions, as a matter of law, exclude any liability of Western on its policy for damage to property? The case of Casualty Reciprocal Exchange v. Waggoner Drilling Co., Okl., 340 P.2d 490, is in point. In that case a Class "B" motor carrier and its insurer were sued for damages to property. The policy in that case had an exclusion similar to the one set forth herein. That case holds:

"Under Sec. 169, 47 O.S.1951, supra, policies such as the one under consideration shall cover 'loss or damage to property.' This broad statutory provision, of course, becomes a part of the insurance policy in controversy and prevails over provisions of the policy to the contrary. Enders v. Longmire, 179 Okl. 633, 67 P.2d 12."

The policy of insurance having been filed pursuant to the statute, 47 O.S.1961, sec. 169, as then in force, the statute became a part of the contract of coverage and the terms of the statute control as to the character of said coverage.

The judgment is affirmed.

Affirmed.

BERRY, P. J., and HARRIS, J., concur.