OSCN Found Document:ALFALFA ELECTRIC COOPERATIVE, INC. v. MID-CONTINENT CASUALTY COMPANY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 ALFALFA ELECTRIC COOPERATIVE, INC. v. MID-CONTINENT CASUALTY COMPANY
2015 OK CIV APP 53
350 P.3d 1276
Case Number: 111581
Decided: 12/19/2014
Mandate Issued: 05/28/2015
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2015 OK CIV APP 53, 350 P.3d 1276

 

ALFALFA ELECTRIC COOPERATIVE, INC., 
Plaintiff/Appellee,
v.
MID-CONTINENT CASUALTY COMPANY, an Oklahoma for 
Profit Corporation, Defendant/Appellant,
and
Superior Pipeline Company, 
L.L.C., an Oklahoma Limited Liability Company, and Triple J. Production, Inc., 
Defendants.

APPEAL FROM THE DISTRICT COURT OF
GARFIELD COUNTY, 
OKLAHOMA
HONORABLE TOM NEWBY, TRIAL JUDGE

AFFIRMED

Richard E. Hornbeek, Amber M. Brock, Larry George Cassil, Jr., Hornbeek, 
Vitali & Braun, P.L.L.C., Oklahoma City, Oklahoma, for 
Plaintiff/Appellee,
Thomas Edward Mullen, Oklahoma City, Oklahoma, for 
Defendant/Appellant.


Wm. C. Hetherington, Jr., Vice-Chief Judge:
¶1 In this action for breach of contract, negligence and quantum meruit 
Alfalfa Electric Cooperative, Inc. (AEC) filed against Superior Pipeline 
Company L.L.C. (Superior), Triple J Production Company, Inc. (Triple J), and 
Appellant Mid-Continent Casualty Company (Insurer) for damages to AEC's 
transformer and trailer, Insurer appeals a summary adjudication order in favor 
of AEC finding the commercial auto policy Insurer issued to Triple J provided 
coverage for the alleged damages sought by AEC. We affirm.
STANDARD OF REVIEW
¶2 This appeal is governed by and follows the procedure set forth in Oklahoma 
Supreme Court Rule 1.36, 12 O.S. 2011, ch. 15, app. 1, without appellate 
briefing. The appellate standard of review for a trial court's grant of summary 
judgment is de novo. Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. When one party 
is entitled to judgment as a matter of law, i.e., there are no material 
disputed facts, summary judgment will be affirmed. Id.
HISTORY OF CASE
¶3 AEC's second amended petition generally alleged that in February 2010 AEC 
agreed to rent Superior a 5,000 KVA trailer mounted transformer on a temporary 
basis and Superior agreed to pay a rental fee and assume any and all liability 
for the transformer "from the time it was delivered and until it was picked up 
by [AEC]." AEC further alleged, as facts common to all "counts': 1) Superior did 
not pay any monies owed under the rental agreement, 2) when Superior had 
finished working with the transformer, it hired Triple J to return it to AEC, 3) 
while Triple J was in route to AEC, a mishap occurred with the trailer hitch on 
Triple J's trailer, resulting in damage to the transformer, the transformer 
trailer, and a spill of the transformer's fluids "onto the ground," 4) the 
incident occurred in Enid, Oklahoma, 5) an undetermined amount of oil leaked 
onto the pavement, and a fire was started, and at all times pertinent, 6) Triple 
J was a licensed intrastate "private" motor carrier, and Insurer held the 
"liability insurance policy covering injuries and property damage as required by 
Oklahoma law."
¶4 AEC's second amended petition included the originally-pled two "counts" or 
theories of liability against Superior, i.e., breach of contract and 
quantum meruit, and three against Triple J, i.e., breach of 
bailment contract, negligence, "presumption of negligence/res ipsa loquitor." 
AEC added Insurer as a defendant and a new theory of liability against Triple J 
and Insurer, alleging they were jointly liable for the damages caused by Triple 
J based on the insurance policy issued "by [Insurer] pursuant to the applicable 
motor carrier regulations."
¶5 Insurer moved for summary judgment, arguing there was no coverage for the 
alleged damages due to certain exclusions in Triple J's three separate policies, 
i.e., commercial auto liability, commercial general liability policy, and 
inland marine. To support its arguments, Insurer attached AEC's second amended 
petition, relevant pages of the three policies, and an affidavit from Insured's 
employee, Gary Renneckar, attesting Insurer had three policies with Triple J and 
that there was no coverage under the policies. AEC filed a combined response and 
cross-motion for summary judgment, attaching Triple J's answers to AEC's first 
request for admissions and its first interrogatories,[1] excerpts from Mr. Renneckar's 
deposition testimony, and a "certified" copy of Triple J's multi-page commercial 
auto liability policy.
¶6 Insurer filed a response opposing AEC's cross-motion and a separate reply 
to AEC's response to Insurer's summary adjudication motion. AEC then replied to 
Insurer's response to AEC's cross-motion. Three weeks later, the trial court 
filed a letter addressed to the parties' counsel which summarized its rulings on 
their motions, identified the remaining issues, and directed AEC's counsel to 
prepare the order.
¶7 Following the filing of both parties' motion to settle journal entry, the 
court filed a "Journal Entry of Judgment" October 3, 2012. The judgment states 
the parties' motions were taken under advisement pending receipt of "a certified 
copy of the Commercial Auto Liability Policy issued to [Triple J] by [Insurer] 
which [it] subsequently provided."[2] It also states the court "considered that Policy in 
rendering its decision" and "adopts and includes the Policy as part of the 
summary judgment evidence of record." After stating the parties were notified of 
its ruling by letter dated Aug 22, 2013,[3] the court denied Insurer's motion for summary 
adjudication and granted, in part, AEC's cross-motion, without explanation for 
rulings. Six days later, Insurer moved for immediate appeal, which AEC opposed, 
and after a hearing, the trial court denied Insurer's certification request by 
order filed Jan. 30, 2013.
¶8 The trial court subsequently filed a "Journal Entry of Judgment" on 
February 14, 2013, explaining Triple J had confessed liability for the accident 
that is the subject of the lawsuit and damages to AEC's property and equipment. 
The court also explains his prior decisions to overrule Insurer's motion to 
dismiss based on his determination it was a proper party in the case and to 
grant summary adjudication in favor of AEC and against Insurer. In the same 
judgment, the court finds 1) AEC was entitled to judgment against Triple J and 
Insurer, jointly and severally, 2) there was no dispute as to amount of damages, 
which totaled $54,712.06, 3) the parties agreed to AEC's entitlement to attorney 
fees as the prevailing party in its negligent injury to property action pursuant 
to 12 O.S. 2011 § 940, and to the 
amount of reasonable fees and costs AEC incurred in prosecuting the action, in 
the sum of $27,012.09. That same day, AEC filed a dismissal of any and all of 
its claims against the remaining party, Superior, without prejudice to refiling. 
Insurer's appeal followed.
ANALYSIS
¶9 Insurer's Petition in Error raises four errors with the trial court's 
granting of AEC's cross-motion for summary judgment. Based, in part, on AEC's 
dismissal of its claims against Superior, we need not address Insurer's 
allegation of error concerning inclusion of damages for rent in the award.[4] Concerning the 
remaining three issues, Insurer basically argues the evidentiary materials and 
the unambiguous language in Triple J's commercial auto liability (CAL) policy 
reveal disputed material facts relating to three separate policy exclusions 
applicable to AEC's damages which Insurer argues preclude summary adjudication 
in AEC's favor.
¶10 As previously noted, the summary adjudication order on appeal does not 
specify any reason(s) for denying Insurer's motion or granting, in part, AEC's 
cross motion for summary judgment. In light of the parties' arguments, the order 
on appeal implies the trial court's agreement that the Policy's exclusions are 
unambiguous, the material facts necessary to apply each of the three policy 
exclusions are undisputed, and as a matter of law, neither exclusion applies in 
this case to exclude coverage.
¶11 Insurer does not, however, raise any error on appeal with the court's 
implied rejection of Insurer's "standing" arguments made in response to AEC's 
cross-motion for summary judgment: 1) AEC lacks "standing" to bring a direct 
action against Insurer because AEC's alleged damages are to "cargo," for which 
47 O.S. 2001 § 230.30(B) requires 
the filing of a "cargo" insurance policy or bond and Insurer issued Triple J 
only a policy covering public liability and property damage required by 47 O.S. 2001 § 230.30(A), and 2) 
motor carrier liability insurers are not proper parties in tort actions 
filed against their insureds and can be sued directly only after judgment has 
been entered against the motor carrier, citing Fierro v. Lincoln General 
Insurance Company, 2009 OK CIV 
APP 62, 217 P.3d 158.
¶12 In AEC's reply, it argues Insurer had made the "same argument" in its 
motion to dismiss and that the trial court correctly denied "based on 
long-standing Oklahoma judicial authority." Neither Insurer's motion to dismiss 
or the order resolving it is included in the accelerated record. However, the 
trial court's denial has record support in the October 3, 2013 Journal Entry of 
Judgment, explaining he overruled the dismissal motion, finding Insurer "is a 
proper party in this case."
¶13 "Standing refers to a person's legal right to seek relief in a judicial 
forum." Fent v. Contingency Review Bd., 2007 OK 27, ¶ 7,163 P.3d 512, 519. "Standing may be 
raised at any stage of the proceeding, and when raised, the party invoking the 
court's jurisdiction has the burden of establishing his or her standing." 
Wells Fargo Bank N.A. v. Heath, 2012 OK 54, ¶ 12, 280 P.3d 328, 334.
¶14 To the extent Insurer's second argument re-urges AEC may not bring a 
direct action against Insurer as Triple J's motor carrier liability insurance 
carrier and its first argument brings a new challenge to AEC's standing 
based on Insurer's alleged non-liability for AEC's alleged damages to "cargo," 
we must address these predicate issues before proceeding with interpretation of 
the policy. We begin with Insurer's second argument.
¶15 As relevant here, Insurer issued a Form F to Triple J pursuant to § 
230.30(A), part of Oklahoma's Motor Carrier Act of 1995 (the MCA), 47 O.S. § 230.21 et seq. 
According to § 230.22(C), the MCA applies "to the transportation of passengers 
or property by motor carriers and private carriers, except motor carriers 
of household goods and used emigrant movables, over public highways of this 
state." (Emphasis added.) Section 230.30(A) mandates "no license shall be issued 
by the [Corporation] Commission to any carrier until after the carrier shall 
have filed with the Commission a liability insurance policy or bond covering 
public liability and property damage ..."
¶16 That section's predecessor, 47 
O.S. 2001 § 169, has long been interpreted by the Supreme Court 1) to make a 
motor carrier and its insurer "jointly liable" and 2) to allow an injured third 
party to bring a direct action against a tortfeasor motor carrier and its 
insurer when the liability policy or bond required by § 169 has been filed with 
the Oklahoma Corporation Commission (OCC). Diagle v. Hamilton, 1989 OK 137, ¶ 8, 782 P.2d 1379, 1381 (citing 
Enders v. Longmire, 1937 OK 
154, 67 P.2d 12). Important 
to this issue, the Legislature enacted § 230.30(A) as part of the MCA without 
deleting any § 169 language the Supreme Court had previously interpreted to 
allow a direct action against a motor carrier and its insurer, i.e., "the 
liability and property damage insurance policy or bond shall bind the obligor 
thereunder to make compensation for . . . loss or damage to property, 
resulting from the operation of any carrier for which the carrier is 
legally liable."
¶17 In Fierro, another panel of this division of the Court of Civil 
Appeals addressed § 230.30(A) of the MCA and found the statute denied a third 
party's direct action against the insurer of an interstate motor carrier 
whose compulsory public liability policy had been filed in its home state and 
not in Oklahoma as required to invoke the MCA. Thus Fierro is factually 
distinguishable from the instant case which involves an intrastate motor 
carrier, Triple J, about which there is no dispute its § 230.30(A) liability 
policy was properly filed with the OCC.
¶18 Insurer also argues § 230.30(A)'s language, i.e., "after judgment 
against the carrier for any damage, the injured party may maintain an action 
upon the policy or bond to recover the same, and shall be a proper party to 
maintain such action," precludes a direct action against a motor carrier insurer 
until entry of judgment against the motor carrier. However, the same 
argument regarding this exact language in § 169 was made in Enders v. 
Longmire and expressly rejected by the Supreme Court, 1937 OK 154, ¶14-15, 67 P.2d at 15. 
More importantly, in 1995, the Legislature adopted the same § 169 language when 
it enacted § 230.30(A) of the MCA. "Unless a contrary intent appears, if a 
statute previously construed by a court of last resort is reenacted in the same 
or substantially the same terms, the Legislature is presumed to have been 
familiar with the previous construction and to have adopted such construction as 
an integral part of the statute." Boswell v. Schultz, 2007 OK 94, ¶ 13, 175 P.3d 390, 394. Finding no 
contrary intent in § 230.30(A), we affirm the trial court's implied rejection of 
Insurer's general standing argument.
¶19 We also reject Insurer's lack of standing argument based on its position 
that AEC's alleged damages to its transformer are to "cargo," for which § 
230.30(B) mandates "cargo" insurance. The Legislature enacted the MCA to 
"regulate transportation by motor carriers and private carriers" for the "public 
interest," recognizing the need to require "all motor carriers and private 
carriers" 1) to have adequate insurance, 2) to provide service in a safe and 
efficient manner, and 3) to prevent "a detrimental impact on the environment" by 
the operations of "motor carriers and private carriers." See § 230.22(A) 
of the MCA.
¶20 As relevant here, the Legislature vested the OCC with powers "to protect 
the shipping and general public by supervising and requiring 
insurance of all motor carriers and private carriers" and "to establish there 
will be no detrimental environmental impact." § 230.24(A)(2) and § 230.24(A)(4) 
of the MCA. The OCC also has the duty "to supervise and regulate motor carriers 
in all other matters affecting the relationship between such carriers and the 
traveling and shipping public." § 230.24(A)(5) of the MCA. As part of the 
general and shipping public, AEC qualifies as an intended beneficiary of the 
MCA's protections. See also Casualty Reciprocal Exchange v. Waggoner Drilling 
Company, 1959 OK 43, 340 P.2d 490 (based on § 169 and 
motor carrier's liability policy, the court held the insurer liable to a 
non-traveling owner for property damages to a drilling rig during 
re-assembly).
¶21 The terms "motor carrier" and "private carrier" are defined by the MCA 
with very distinct meanings. As relevant here, a "motor carrier" means "any 
person. . . operating upon any public highway for the transportation of 
passengers or property for compensation or for hire or for commercial purposes, 
and not operating exclusively within the limits of an incorporated city or two 
with this state." § 230.23(6) of the MCA. In contrast, "private carrier" means 
"any person engaged in transportation upon public highways, of persons or 
property or both, but not as a motor carrier." (Italics added.) § 
230.23(9) of the MCA. "Private carrier" also "includes any persons who 
transports property by motor vehicle where such transportation is incidental to 
or in furtherance of any commercial enterprise of such person, other than 
transportation." Id.
¶22 Unlike the majority of the MCA sections which address "motor carriers and 
private carriers,"[5] Insurer's argument fails to consider § 230.30(A)'s 
mandate for filing a liability policy with the OCC, is directed to "any 
carrier," which reference clearly and unambiguously includes both motor carriers 
and private carriers. In contrast, § 230.30(B) of the MCA mandates "every 
motor carrier" to file a cargo insurance policy covering any goods or 
property being transported. Similarly, the MCA also mandates "every motor 
carrier, subject to the [MCA], receiving property for transportation in 
intrastate commerce" to issue a receipt or bill of lading." § 230.25 of the MCA. 
The MCA includes no similar or identical statutory mandates for "private 
carriers." Based on our interpretation of § 230.30, in its entirety and with the 
MCA as a whole, and in light of its stated intent and purposes, we conclude the 
Legislature clearly intended both motor carriers and private carriers to file § 
230.30(A) liability insurance policies, whereas the § 230.30(B)'s mandate for 
cargo insurance only applies to motor carriers.
¶23 In this case, except for the sole reference in the title of the Form F 
attached to the Policy, "Uniform Motor Carrier Bodily Injury and Property Damage 
Liability Insurance Endorsement," Insurer has not demonstrated Triple J is a 
"motor carrier," as defined by the MCA, to which § 230.30(B)'s requirement for a 
cargo insurance applies. Because the evidentiary materials presented to the 
trial court support only Triple J's status as a intrastate private carrier, we 
affirm the trial court's implied rejection of Insurer's remaining standing 
argument.
Rules Applicable to Insurance Policies
¶24 "Interpretation of a policy with its exclusions is a law question," 
unless the facts necessary to apply the decided law question are in 
dispute. Wiley v. Travelers Insurance Company, 1974 OK 147, ¶15, 534 P.2d 1293, 1296. "A policy of 
insurance is a contract and should be construed like any other contract . . . 
where not ambiguous, according to its terms." Id., ¶16. "Parties to 
insurance contracts are at liberty to contract for insurance to cover the risks 
as they see fit and are bound by terms of the contract." Id. As a result, 
"courts will not undertake to rewrite terms [of the insurance contract]." 
Id.
¶25 In a dispute over the language of an insurance policy, our first step is 
to determine as a matter of law whether the policy language at issue is 
ambiguous. See Wynn v. Avemco Ins. Co., 1998 OK 75, ¶17, 963 P.2d 572, 575. If it is not 
ambiguous, we accept the language in its plain, ordinary and popular sense. 
McDonald v. Schreiner, 2001 
OK 58, ¶ 7, 28 P.3d 574, 
577. "We construe the policy to give a reasonable effect to all of its 
provisions." Cranfill v. Aetna Life Ins. Co., 2002 OK 26, ¶ 5, 49 P.3d 703, 706.
¶26 We are also mindful that the "general declaration of insurance . . . 
normally determines the insurance carrier's liability, and the insured's 
respective rights under the contract by identifying what risks are covered and 
excluded by the policy." Dodson v. St. Paul Ins. Co., 1991 OK 24, ¶ 13, 812 P.2d 372, 377 (footnote 
omitted). "[A]n exclusion . . . eliminates coverage where, were it not for the 
exclusion, coverage would have existed" under the insurance policy. Id., 
at n. 11. "Policy exclusions are read seriatim; each exclusion eliminates 
coverage and operates independently against the general declaration of insurance 
coverage and all prior exclusions by specifying other occurrences not covered by 
the policy." Id., ¶ 13, 812 P.2d at 377 (footnote omitted). "In case of 
doubt, exclusions exempting certain specified risks are construed strictly 
against the insurer." Id. (footnote omitted). With these rules in mind, 
we review the Policy.
The Policy
¶27 As relevant here, Triple J is the named insured listed on the Policy's 
Declaration Page, which describes Triple J as a "corporation" that "installs 
& repairs oilfield production equipment." The Policy and its endorsements 
provides coverage for, inter alia, liability, uninsured motorists, and 
motor carrier bodily injury and property damage liability.
¶28 Pursuant to "Section II - Liability Coverage" and subsection A of the 
"Business Auto Coverage," Insurer agreed to pay: 1) "all sums an 'insured' 
legally must pay as damages because of . . . property damage" and 2) "all sums 
an "insured" legally must pay as a "covered pollution cost or expense," that 
"are caused by an accident and resulting from the ownership, maintenance or use" 
of covered autos.
¶29 "Property damage" is defined by the Policy as "damage to or loss of use 
of tangible property," about which there is no dispute the damages to AEC's 
transformer and trailer qualify as such damages were caused by an "accident" and 
resulted from the use of one of Triple J's covered autos. The Policy also 
defines "covered pollution cost or expense" as: 1) "any request, demand . . 
.that any 'insured' or others . . . clean up, remove, contain. . .or neutralize. 
. .the effects of pollutants,"; or 2) "[a]ny claim or suit by or on behalf of a 
governmental entity for damages because of . . . .cleaning up, removing . . .or 
neutralizing. . . the effects of pollutants." There is no dispute in this case 
that: 1) there were billed costs or expenses associated with the cleanup for the 
"spill of fluids from the transformer onto the ground" and/or "the oil that 
leaked onto the pavement" or 2) the "fluids" and/or "oil" are "pollutants," as 
that term is defined by the Policy.
¶30 The controversy between AEC and Insurer involves the applicability of the 
following three exclusions of the Policy's "Business Auto Coverage" section:

 
 B. Exclusions
 This insurance does not apply to any of the 
following:
****

 
 2. Contractual
 Liability imposed under any contract or agreement.
 But this exclusion does not apply to liability for damages:
 a. Assumed in a contract or agreement that is an "insured 
 contract" provided the "bodily injury" or "property damage" occurs 
 subsequent to the execution of the contract or agreement; or
 b. That the "insured" would have in the absence of the contract or 
 agreement.
****

 
 6. Care, custody or Control
 "Property damage" or "covered pollution cost or expense" 
 involving property owned or transported by the "insured" or in the 
 "insured's" care, custody or control. But this exclusion does not apply 
 to liability assumed under a sidetrack agreement.
****

 
 11. Pollution
 "Bodily injury" or "property damage" arising out of the actual, 
 alleged or threatened discharge, dispersal, seepage, migration, release 
 or escape of "pollutants":
 a. That are, or that are contained in any property that is:[6]
  
(1) Being transported or towed by . . . the covered auto.
 

 
 (2) Otherwise in the course of transit by or on behalf of the 
 "insured"; or . . .[7] (Italics added.)
Exclusions B.6. and B.11
¶31 To support the Policy provides no liability coverage for AEC's damages, 
Insurer essentially argues there is one undisputed material fact in common to 
Exclusions B.6. and B.11. that precludes summary judgment in favor of AEC and 
requires summary judgment in its favor - Triple J was transporting and towing 
AEC's trailer mounted transformer when it became unattached from Triple J's 
hitch.
¶32 AEC admits it originally alleged Triple J was "transporting" the trailer 
mounted transformer when it was damaged, but responds to Insurer's motion, 
arguing subsequent discovery revealed different circumstances leading to the 
incident about which "there is a question of fact . . . precluding summary 
judgment." In its cross-motion, AEC argues the inapplicability of the pollution 
exclusion B.11. in great detail but does not make any similar argument about 
Exclusion B.6.
¶33 We agree there is a common thread in the Policy's Exclusions B.6. and 
B.11. by which Insurer attempts to exclude payment for both "property damage 
involving property . . . transported by "insured" and "property damages . 
. .arising from the actual . . . release or escape of 'pollutants'. . .that are 
contained in any property that is being towed or transported by a covered 
auto." Relying solely on Gary Renneckar's deposition testimony, AEC argues the 
transformer and trailer were no longer being towed or transported when the 
hitch malfunctioned. Assuming without deciding that AEC's argument is 
correct, AEC has failed to consider an undisputed material fact revealed by the 
evidentiary materials, i.e., Triple J was in physical possession or in 
custody of the transformer and trailer when the accident occurred. Application 
of that fact alone to the remaining part of Exclusion B.6., "property damage 
involving property. . .in the insured's care, custody or control", results in 
potential application of that specific exclusion.
¶34 Similarly, it is also undisputed Triple J was between its point of 
departure and the final destination 1) when the hitch on its covered vehicle 
malfunctioned and ultimately causing the transformer and trailer to overturn and 
2) when the pollutants contained in the transformer were released on the ground 
and/or pavement. As a result, application of these undisputed facts to the 
remaining part of Exclusion B.11.a.2., i.e., "'property damage' arising 
out of the actual. . . release or escape of 'pollutants' . . . that are 
contained in any property that is . . .[o]therwise in the course of transit by 
or on behalf of the 'insured,'" also implicates this exclusion.
¶35 In light of these undisputed facts, the clear and unambiguous language of 
the Policy's Exclusion B.6. and B.11 would appear to support Insurer's position 
of no coverage under either exclusion and summary judgment in its favor. 
However, because the Policy, as AEC further argues,[8] includes a specific endorsement for 
motor carrier public liability insurance (Form F) required by § 230.30, we must 
address its effect on the Policy's coverages and exclusions.
¶36 We conclude the trial court's order in favor of AEC is supported by 
Oklahoma precedent interpreting § 230.30's predecessor, § 169, as becoming part 
of the Policy and controlling over similar policy exclusions. In Casualty 
Reciprocal Exchange v. Waggoner Drilling Company, 1959 OK 43, 340 P.2d 490, the owner of property 
sued a trucking company hired to transport an oil well drilling rig from one 
lease to another, seeking damages sustained to the drilling rig's mast while the 
trucking company was re-assembling the rig at the delivery point. Similar to the 
facts of this case, a malfunction of the trucking company's vehicle caused the 
mast to fall to the ground when attempting to raise it with a winch that was 
attached to the truck.
¶37 Based on the undisputed evidence, the Court in Waggoner 
determined, as relevant here, that 1) the disassembling, loading, unloading, and 
reassembling of the oil rig and transportation from one lease to another 
"constituted one continuous act of transportation" and 2) even though the 
vehicle was off the highway at the time of the resulting damage, the 
operation or use of the vehicle in reassembling the rig was "incident to 
the transportation of the rig" and "had a proximate and necessary 
connection with the operation and use of the vehicle upon the highway 
within the meaning of 47 O.S. [1951] § 161-169."
¶38 The insurer in Waggoner, similar to Insurer in this case, argued 
the trucking company's insurance policy did not cover the risk. The Court in 
Waggoner pointed out that Insured had agreed in the policy filed with the 
OCC and covering the trucking company as a "Class B Motor Carrier,[9]"

 
 to pay on behalf of insured all sums which the insured shall become 
 obligated to pay by reason of the liability imposed upon him by law for 
 damages because of injury to or destruction of property, including the loss 
 of use thereof, and caused by accident arising out of the ownership, 
 maintenance or use of any motor vehicle in the insured's 
 business."
Considering the exclusion on which the insurer relied to argue the accident 
and resulting property damages were not covered by that policy, i.e., 
"damage to or destruction of loss of cargo or property in the possession of 
the Insured or for which the Insured is legally responsible as carrier . . .or 
bailee . . . ," the Waggoner Court rejected the insurer's argument, 
finding;

 
 Under [47 O.S.1951 §] 169, policies such as the one under consideration 
 shall cover 'loss or damage to property.' This broad statutory provision, of 
 course, becomes a part of the insurance policy in controversy and 
 prevails over provisions of the policy to the contrary. Enders v. 
 Longmire, [1937 OK 54], 67 
 P.2d 12." (Italics added.)
¶39 Relying on the Waggoner Court's same quote from Enders, the 
Court of Civil Appeals in Western Casualty & Surety Co. v. J. R. Adams, 
Inc., 1970 OK CIV APP 4, ¶14, 
465 P.2d 794, 796, reached the 
same conclusion regarding the insurer's liability to cover property damages to 
construction equipment and trailer for which its owner had hired the insured 
motor carrier to transport. While "pulling" the equipment and trailer, the 
insured motor carrier in Western Casualty negligently drove the owner's 
equipment and trailer into a highway overpass causing severe damages to the 
equipment. Like Waggoner, the insurer had issued a § 169 liability policy 
to a Class B motor carrier and argued its policy's terms excluded coverage to 
"injury to or destruction of ***(3)***property in the care, custody, or 
control of the insured or property as to which the insured for any 
purpose is exercising physical control." (Emphasis added.) The insurer also 
attempted to argue, as a bar to liability, language in the policy's motor 
carrier endorsement, "It is agreed and understood that the words 'Damages to 
Property' as used in this endorsement shall be construed to cover any and all 
property, except property of such insured, or carried in or on the motor 
vehicle belonging to or controlled by the insured." (Emphasis added.) The 
Court in Western Casualty affirmed the trial court's judgment in favor of 
the plaintiff/property owner, finding "the policy of insurance having been filed 
pursuant to the statute, 47 O.S. 1961, [§] 169, as then in force, the statute 
becomes a part of the contract of coverage and the terms of the statute control 
as to the character of said coverage." Although differently phrased, the policy 
exclusions in Waggoner and Western Casualty each attempted to 
eliminate liability coverage for property in the possession or 
control and damaged during operation of a motor carrier's business, the 
very circumstances for which [§] 169 mandated such coverage.
¶40 Similar to the pre-1995 and 1995 versions of § 169, § 230.30(A) of the 
MCA mandates "no license shall be issued by the [Oklahoma Corporation] 
Commission to any carrier until after the carrier shall have filed with the 
Commission a liability insurance policy or bond covering public liability and 
property damage . . ." Identical to the language in § 169 relied on by the Court 
in Waggoner, § 230.30(A) mandates "the liability and property damage 
insurance policy or bond shall bind the obligor thereunder to make 
compensation for . . . loss or damage to property, resulting from the 
operation of any carrier for which the carrier is legally liable."
¶41 Further, pursuant to the Form F motor carrier liability endorsement in 
this case, Insurer and Triple J agreed that "the certification of the policy, as 
proof of financial responsibility under the provisions of any State motor 
carrier law. . . amends the policy to provide insurance for automobile 
bodily injury and property damage liability in accordance with the provisions 
of such law. . .to the extent of the coverage and limits of liability 
required thereby." (Emphasis added.)
¶42 Like the owner of the damaged drilling rig in Waggoner and the 
owner of damaged construction equipment in Western Casualty, each of whom 
sued the respective tortfeasor motor carrier for only property damages, AEC was 
not involved in the specific accident with Triple J during which AEC's 
transformer and trailer were damaged while being transported by Triple J, who 
was undisputedly operating as a motor carrier at the time. Therefore, 
Waggoner clearly supports long standing Oklahoma precedent holding motor 
carrier liability insurance required by § 169 was intended to protect "the 
shipping and general public," not only the traveling public. 47 O.S. 2001 § 162; see also 
Tri-State Insurance Company, v. J. O. Hobbs, 1959 OK 143, ¶ 0, 347 P.2d 226, 227; Utilities Ins. 
Co. v. Potter, 1940 OK 127, 
105 P.2d 259, cert. dismissed 61 
S.Ct. 804, 312 U.S. 662.
¶43 Further, the regulations mandated for motor carriers and private carriers 
by the MCA indicate the Legislature's clear intent for the same protections as 
that intended by § 169. See 47 
O.S. 2001 § 230.22 ("it is necessary in the 'public interest' to regulate 
transportation by motor carriers and privates carriers. . .[and] to recognize 
the need of [both carriers] to have adequate insurance. . .[and] to provide 
service in a safe and efficient manner.) Our interpretation is also supported by 
the similarities in the authority vested in the OCC to enforce these statutes. 
See 47 O.S. 2001 § 162 and 
47 O.S. 2001 § 230.24.
¶44 Finally, although no exclusion similar to Exclusion B.11. "Pollutants" 
was at issue in either Waggoner or Western Casualty, we find 
further support for applying Waggoner to that exclusion based on the 
Legislature's since-added protection to the MCA, i.e., "to establish that 
operations of [both carriers] will not have a detrimental impact on the 
environment." This language clearly and unambiguously provides for joint 
liability of motor carriers and their insurers, as in this case, for damages to 
the environment arising from the transportation of pollutants or property 
containing pollutants.
¶45 Because Exclusions B.6. and B.11. each similarly attempt to eliminate 
coverage contrary to § 230.30(A), we conclude, based on Waggoner and the 
intent and stated purposes for the MCA, that the Policy's Form F became part of 
the Policy and controls over these two exclusions. Albeit for other 
grounds, we affirm the court's summary adjudication in favor of AEC based on 
Exclusions B.6. and B.11.
Contractual Exclusion
¶46 Insurer argues Exclusion B.2., "[l]iability imposed under any contract or 
agreement," provides no coverage "for damages as a result of a contractual 
obligation. By cross-motion, AEC argues the same exclusion does not apply, 
claiming the bailment between Superior and Triple J is an "insured 
contract"[10] 
which is the first exception to Exclusion B.2. We agree Exclusion B.2. does not 
apply.
¶47 Insurer's arguments in its summary judgment and its response to AEC's 
cross motion relies on 1) Triple J's admission it had an agreement with Superior 
to transport the trailer mounted transformer, and 2) AEC's alleged 
failure to present any evidence of its speculation of a "master servant 
agreement" or other contract between Triple J and Superior that would constitute 
an "insured contract." For application of Exclusion B.2.'s insured contract 
exception, AEC contends it has proven beyond dispute the status between Superior 
and Triple J as bailor-bailee for which Oklahoma bailment statutes makes the 
latter liable to AEC for damages to the bailed property. The trial court agreed 
with AEC.
¶48 Insurer cites no supporting authority for its interpretation of Exclusion 
B.2. This Court's research discovered no published state or federal court cases 
interpreting the identical Exclusion B.2. language, "[l]iability imposed 
under any contract or agreement" in any type liability policy. Our research did 
disclose other types of contract exclusions with Exclusion B.2.'s same and/or 
similar exceptions. The most similar contract exclusion to the exclusion at 
issue is "[l]iability assumed under any contract or agreement," or words 
to that effect, which version has most commonly been interpreted in the context 
of commercial general liability insurance (CGLI) policies. In such policies, the 
Texas Supreme Court found a split of authority on its interpretation in 
Gilbert Texas Construction, L.P. v. Underwriters at Lloyd's London, 327 
S.W.3d 118, 129-133 (2010), with several courts applying the exclusion only to 
contracts in which the insured has assumed another's liability, e.g., 
indemnity or hold-harmless agreements, and other courts, including the Texas 
Supreme Court, interpreting the exclusion without any such limitation, 
i.e., no coverage for a contract-based claim.
¶49 In 1991, the Oklahoma Supreme Court in Dodson v. St. Paul Ins. 
Co., 1991 OK 24, ¶ 5, 812 P.2d 372, 374, interpreted an 
exclusion in a CGLI policy almost identical to the version addressed by the 
Texas Supreme Court, i.e., "liability assumed by the Insured under 
contract or agreement except an incidental contract." and essentially reached 
the same conclusion.[11] The Dodson Court found "no ambiguity" with 
the exclusion, either when read alone or with two other exclusions not at issue 
in this case, and that it "removes from coverage any cause of action grounded 
upon a liability arising 'under contract or agreement except an incidental 
contract'." (Emphasis added.)
¶50 The Policy does not define the term "imposed" as used in Exclusion B.2. 
As a verb, its common definition is "to cause or to be burdened . . .to force 
one to submit. . .[or] to establish or create (something unwanted) in a forceful 
way." Webster's Third International Dictionary, p. 1136. Based on Dodson 
and the plain and unambiguous terms of Exclusion B.2. in this case, we conclude 
it "removes from coverage any cause of action grounded on a liability arising 
under contract or agreement," i.e., contract-based claims. We further 
find that Exclusion B.2. applies here unless one of its two exceptions 
"reserves coverage," see Dodson, 1991 OK 24, ¶ 14, or "brings a claim 
back into coverage," see Gilbert Texas Construction, 327 S.W.3d at 
133.
¶51 In this case, the contract upon which Insurer solely relies to invoke 
Exclusion B.2. to deny coverage to Triple J is the "bailment agreement" with 
Superior to return the transformer and trailer back to AEC. It is undisputed 
there was no written bailment agreement between those two parties whose terms 
would control over one implied by law. Chambers v. Morgan, 1983 OK CIV APP 59, ¶ 6, 671 P.2d 89 (citing Oklahoma 
Petroleum & Gasoline Co. v. Winship, 1921 OK 293, 200 P. 844).
¶52 AEC relies on the same bailment agreement to invoke the first exception 
of Exclusion B.2., which exclusion the Policy expressly states "does not apply 
to liability for damages . . . a. [a]ssumed in a contract or agreement that is 
an 'insured contract' . . ." We can not agree with AEC's interpretation 
considering the Policy's definition of "insured contract" begins with "[t]hat 
part of any other contract or agreement pertaining to your business. . .under 
which you assume the tort liability of another party to pay for . . .'property 
damage.'" As we interpret Exception a., in its entirety and with Exclusion B.2. 
as a whole, in order to qualify as an "insured contract," Triple J would have 
had to 1) expressly assume the tort liability of Superior to pay property 
damages to AEC under their rental contract when Triple J and Superior 
agreed to the bailment for the transformer and to 2) execute its agreement to 
assume Superior's tort liability prior to the property damage 
occurrence.
¶53 In this case, Insurer denied AEC's allegation in its second amended 
petition that Superior "agreed to . . . assume any and all liability for the 
transformer" in its rental contract with AEC, and neither the rental contract 
nor other evidentiary support for Superior's alleged assumption is included in 
the accelerated record. Further, AEC has not produced any evidentiary support 
for the existence of a master service agreement or other contract between Triple 
J and Superior which AEC contends might also qualify as an "insured contract." 
As cross-movant for summary adjudication on the issue of Insurer's liability 
under the Policy, AEC has failed to establish application of exception a. to 
Exclusion B.2.
¶54 However, the same may not be said about Exception b. to Exclusion B.2. As 
previously noted, Exclusion B.2. does not apply to "liability for damages . . . 
b. That the 'insured' would have in the absence of the contract or 
agreement." Aside from the implied bailment agreement, Triple J would be 
liable for the property damages to AEC's transformer by general common law 
negligence and under Oklahoma's Motor Carrier regulations by virtue of the Form 
F attached to the Policy. Therefore, Exclusion B.2. is inapplicable due to 
reservation of coverage by Exception b. Having previously concluded the motor 
carrier liability endorsement issued to Triple J as required by § 230.30 
controls over and replaces Exclusions B.6. and B.11., we find Insurer liable 
under the Policy.
CONCLUSION
¶55 The trial court's summary adjudication in favor of AEC is 
AFFIRMED.

JOPLIN, P.J., and BUETTNER, J., concur.

FOOTNOTES

[1] Per 
Triple J's answers to AEC's request for admissions, Triple J admits it "entered 
into an agreement with Superior "to transport the transformer back to [AEC]." 
Triple J also admitted it was a "bailee" of the transformer during the time 
Triple J had possession of the transformer. Per AEC's first interrogatories, 
Triple J admits it "has transacted and done business with Superior numerous 
times in the past five years," did not enter into a written contract with 
[Superior] in regard to the transportation of the KVA trailer mounted 
transformer identified in [AEC's] petition," and that the "[v]ehicle used to 
transport the trailer mounted transformer. . .[was a] 2000 FL 80 Freightliner." 
Triple J denied any use of the transformer while it was in its possession. 
According to Triple J, its employee, Justin Frye, spoke and agreed with Superior 
that Triple J would be hired to transport the transformer, and its licensed 
certified DOT driver Ronald Tharp was driving the covered vehicle to transport 
the transformer on March 3, 2010. "[Triple J] verily believes there may have 
been both (sic) a trailer brake malfunction resulting in excessive stress to the 
trailer hitch."

[2] There 
is a page missing from the accelerated record, specifically "p. 10 of 12" in 
Exhibit 4, Triple J's commercial auto liability policy attached to AEC's 
cross-motion for summary judgment. The missing page presumably defines the 
policy term, "insured contract," upon which AEC relies to support the 
applicability of an exception to the policy's exclusion for contract damages. 
This missing page may explain the trial court's need to take the case under 
advisement pending receipt of a "certified copy" of the Policy. AEC quoted the 
definition of "insured contract" from the Policy in its cross-motion, the 
accuracy of which Insurer does not dispute in its response. Uncontroverted 
admissions in the brief are acceptable as material supplementing the record. 
Deffenbaugh v. Hudson, 1990 OK 
37, ¶4, 791 P.2d 84, 
85.

[3] In its 
August 22, 2012 letter included in the accelerated record, the trial court found 
Insurer's "Commercial Auto Policy" covers Triple J for specified damages 
because:
As AEC's bailee, Triple J is responsible for the damages to AEC's property 
that occurred while in the control of Triple J. Because of this bailment, 
[Insurer's] Policy exclusion of "insured contract" is inapplicable as a carve 
out of the contracts exclusion.
Further, the pollution exclusion is inapplicable, as a governmental entity 
ordered the clean up. While the bill was sent to AEC, Triple J was the cause of 
the bill. [Insurer's] Policy covers the environmental spill cleanup and 
testing.
We do not rely on the above ruling due to several inconsistencies. First, the 
trial court does not expressly rule out Exclusion B.6. although argued by 
Insurer. However, the court's coverage finding partly based on Triple J's 
"control" of AEC's property when the damage occurred, alone, triggers that 
exclusion and therefore appears inconsistent with both denial of Insurer's 
motion and granting of AEC's cross-motion. Further, even if we assume by the 
trial court's reference to "Policy exclusion of 'insured contract'" that 
he instead meant to say, "Policy exception of 'insured contract,'" his 
finding that the latter is "inapplicable as a carve out of the contracts 
exclusion" is basically a finding that Exclusion B.2. excludes coverage. This 
too would be inconsistent with his denial of Insurer's motion and granting of 
AEC's cross-motion.

[4] In one 
of the four issues listed in Exhibit C of Insurer's Petition in error, it 
contends there are "fact issues" regarding "the allegation that part of the 
damages were rent when rent is not the type of damages covered by [Insurer's] 
Commercial Auto Policy." Those alleged damages were requested by AEC in its 
claim solely against Superior "for unpaid monies owed under the contract for 
rent of the transformer and use of the trailer between AEC and Superior." The 
issue appears to be moot due to AEC's dismissal "any and all of [its] claims 
against [Superior]" in the case "without prejudice to future refiling of the 
same" on February 14, 2013.

[5] See § 
230.22 and § 230.24(A)(1-4). However, the MCA refers only to "motor carriers" in 
§ 230.25(A) ("every motor carrier . . .receiving property for transportation in 
intrastate commerce shall issue a receipt or bill of lading therefor . . ."). 
Section 230.28(A) separately identifies unlawful conduct in Oklahoma for "any 
motor carrier" and for "any private carrier."

[6] Under 
the B.11. exclusion, the policy further states that "[p]aragraph a. above does 
not apply to fuels, lubricants, fluids. . . that are needed for . . .normal 
electrical, hydraulic or mechanical functioning of the covered auto or its 
parts." This language is clearly inapplicable to the facts of this 
case.

[7] 
Paragraph a(3) of the B.11. exclusion, which excludes pollutants "being stored, 
disposed of, treated or processed in or upon the covered auto," has no 
application to the facts of this case. Because the subject accident undisputedly 
occurred on the highway and not at Triple J's place of business, we need not 
consider the remaining two paragraphs included in the B.11. exclusion based on 
the following explanation within the exclusion:
Paragraphs b. and c. above of this exclusion do not apply to "accidents" that 
occur away from premises owned by or rented to an "insured" with respect to 
"pollutants" not in or upon a covered "auto" if:
(1) . . .any property in which the "pollutants" are contained are upset, 
overturned or damaged as a result of the maintenance or use of a covered "auto"; 
and
(2) The discharge . . . release or escape of the "pollutants" is caused 
directly by such upset, overturn or damage.

[8] On page 
7 of AEC's Response and cross-motion, it lists the undisputed facts regarding 
Insurer's issuance of the motor carrier liability policy to Triple J as a 
private carrier. However, page 17 of that same brief is missing from the 
accelerated record submitted to this Court. Because the next page contains AEC's 
argument for applicability of 47 O.S. 
2001 § 230.30(A) in the commercial auto policy Insurer issued to Triple J 
and Insurer replies solely to that argument, this Court has not required 
Appellant to provide the missing page.

[9] 
Pursuant to 47 O.S. 1951 § 
161(b)(1), "Class 'A' motor carriers" included "all motor carriers operating 
as common carriers, of persons or property between fixed termini or over a 
regular route, even though there be periodic or irregular departures from said 
termini or route." Under § 161(b)(2), "Class 'B' motor carriers shall include 
all other motor carriers not operating as Class "A" or "C" motor carriers, 
whether as private carriers for hire or common carriers for hire, of persons or 
property." Section 161(b)(3) defined "Class 'C' motor carriers" as including all 
other persons, firms, or corporations, their trustees or receivers, engaged in 
the transportation of property in furtherance of any private commercial 
enterprise and not operating as a private carrier for hire or as a common 
carrier for hire." It appears from these definitions that a "private carrier," 
as currently defined by § 230.22(9) of the MCA, is a combination of B and C 
motor carrier classes.

[10] As 
used in Exclusion B.2., the Policy defines the term "insured contract" as 
follows:
That part of any other contract or agreement pertaining to your business 
(including an indemnification of a municipality in connection with work 
performed for a municipality) under which you assume the tort liability of 
another party to pay for "bodily injury" or "property damage" to a third person 
or organization, provided the "bodily injury" or "property damage" is caused, in 
whole or in part, by you or those acting on your behalf. Tort liability means a 
liability that would be imposed by law in the absence of any contract or 
agreement.

[11] For 
the record, the contractual exclusion interpreted by the Dodson Court is 
very similar to the same exclusion in the CGLI Policy Insurer issued to Triple J 
and which Insurer also argued excluded coverage for the subject property damage 
to AEC's transformer and trailer, i.e., "[t]his insurance does not apply 
to . . . "property damage" for which the insured is obligated to pay damages by 
reason of the assumption of liability in a contract or 
agreement."





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1970 OK CIV APP 4, 465 P.2d 794, WESTERN CASUALTY AND SURETY CO. v. J.R. ADAMS
Discussed
 2009 OK CIV APP 62, 217 P.3d 158, FIERRO v. LINCOLN GENERAL INSURANCE COMPANY
Discussed
 1983 OK CIV APP 59, 671 P.2d 89, Chambers v. Morgan
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1989 OK 137, 782 P.2d 1379, 60 OBJ 2551, Daigle v. Hamilton
Discussed
 1940 OK 127, 105 P.2d 259, 188 Okla. 145, UTILITIES INS. CO. v. POTTER
Discussed
 1990 OK 37, 791 P.2d 84, 61 OBJ 1018, Deffenbaugh v. Hudson
Discussed
 1991 OK 24, 812 P.2d 372, 62 OBJ 802, Dodson v. St. Paul Ins. Co.
Discussed at Length
 1937 OK 154, 67 P.2d 12, 179 Okla. 633, ENDERS v. LONGMIRE
Discussed at Length
 2001 OK 58, 28 P.3d 574, 72 OBJ 1959, MCDONALD v. SCHREINER
Discussed
 1959 OK 43, 340 P.2d 490, CASUALTY RECIPROCAL EXCH. v. WAGGONER DRILLING CO.
Discussed at Length
 1959 OK 243, 347 P.2d 226, TRI-STATE INSURANCE COMPANY v. HOBBS
Cited
 1921 OK 293, 200 P. 844, 83 Okla. 146, OKLAHOMA PETROLEUM & GASOLINE CO. v. WINSHIP
Discussed
 2002 OK 26, 49 P.3d 703, CRANFILL v. AETNA LIFE INS. CO.
Discussed
 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed
 2007 OK 27, 163 P.3d 512, FENT v. CONTINGENCY REVIEW BOARD
Discussed
 2007 OK 94, 175 P.3d 390, BOSWELL v. SCHULTZ
Discussed
 2012 OK 54, 280 P.3d 328, WELLS FARGO BANK, N.A. v. HEATH
Discussed
 1974 OK 147, 534 P.2d 1293, WILEY v. TRAVELERS INSURANCE COMPANY
Discussed
 1998 OK 75, 963 P.2d 572, 69 OBJ 2620, Wynn v. Avemco Insurance Co.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 940, Negligent or Willful Injury to Property - Attorney's Fees and Costs - Offer and Acceptance of Judgment
Cited
Title 47. Motor Vehicles
 Cite
Name
Level

 47 O.S. 230.24, Powers and Duties of Corporation Commission
Cited
 47 O.S. 161, Repealed by Laws 2009, SB 503, c. 183, § 15, eff. November 1, 2009
Cited
 47 O.S. 162, Authority of Corporation Commission
Discussed
 47 O.S. 169, Filing of Certificates of Insurance Coverage as Condition Precedent to Certificate - Actions by Injured Party - Failure to Maintain Coverage
Cited
 47 O.S. 230.21, Short Title
Cited
 47 O.S. 230.22, Necessity to Regulate Transportation by Motor Carriers and Private Carriers - Revocation of Existing Intrastate Certificates and Permits - Applicability of Provisions - Construction of Act
Cited
 47 O.S. 230.30, Issuance of License - Requirement of Insurance - Cargo Insurance Policy or Bond.
Discussed at Length